MARY CURTISS, widow of James Curtiss, deceased, Plaintiff in Error, *v.* WILLIAM H. BROWN *et al.*, Defendants in Error.

ERROR TO COOK.

| 29 | 201 |
| 123 | 264 |
| 123 | 265 |
| 123 | 518 |
| 29 | 201 |
| 131 | 192 |
| 29 | 201 |
| 146 | 252 |
| 29 | 201 |
| 63a | 356 |
| 64a | 537 |
| 29 | 201 |
| 171 | 648 |
| 172 | 479 |
| 29 | 201 |
| e184 | 273 |
| 29 | 201 |
| 114a | ²240 |

Courts of chancery have power, in cases of necessity, to order a disposition of trust estates which is not in accordance with the provisions of the deed creating the trust.

This power should be exercised with great caution.   And it is the duty of the court when unforeseen exigencies arise; which make its exercise necessary, to place itself in the position of the creator of the trust, and to do as he would have desired, if he had anticipated the existing circumstances.

This court will not disturb a decree, after it has been executed, and when its reversal would destroy existing rights legally and in good faith acquired under it—especially where no benefit will result to the complainant by doing so.

**14**

THIS record states that the bill of complaint of James Curtiss, and Mary Curtiss his wife, against William H. Brown, was, by the said complainants in person, filed in Cook County Court of Common Pleas, on 16th day of September, 1852.

This bill sets forth that the complainant, James Curtiss, was, prior to that time, seized in fee simple of a great number of tracts of land, including blocks 44 and 45, in Carpenter's Addition to Chicago, which were sold on execution in satisfaction of judgments against him, and that by virtue of such sale and otherwise, the title to said lands became vested in one Harrison Gray, of Boston. That the complainant, Mary Curtiss, being entitled to dower in said several parcels of land, and said Harrison Gray being desirous of obtaining a relinquishment of said right of dower, an agreement was entered into between said Harrison Gray, and said complainant, by which said complainant, Mary Curtiss, was to release her right of dower, and said Harrison Gray, in consideration thereof, was to convey to the said complainant, or to some third person for the complainant, Mary Curtiss, said blocks 44 and 45, in said Carpenter's Addition.

That in pursuance of said agreement, oratrix released and conveyed to said Gray her right of dower in all the said parcels of land, and said Gray and his wife thereupon conveyed said blocks 44 and 45 aforesaid, unto William H. Brown, in trust for the sole use and benefit of oratrix, which conveyance is in the words and figures following :

The deed, down to the *habendum* clause, is in common form of deed, setting forth that said Gray and wife, in consideration of one dollar, "grant, remise, release and forever quitclaim" unto said Brown, his heirs and assigns, "all right, title, interest and estate" of grantors in and to blocks 44 and 45, Carpenter's Addition to Chicago ; and then proceeds as follows :

"To have and hold the above granted premises, with all my right, title, interest and estate in and to the privileges and appurtenances to the said land and tenements belonging, to him the said William H. Brown and his heirs during the joint lives of Mary Curtiss, and James Curtiss her husband, upon

trust to pay the rents, issues and profits thereof to the said Mary Curtiss, or to such person or persons as she by writing should direct to receive the same, during the joint lives of the said Mary Curtiss and James Curtiss, for her sole and separate use, so that the said Mary Curtiss shall not sell, mortgage, charge or otherwise dispose of the same in the way of anticipation ; and from and immediately after the decease of the said James Curtiss, her husband, in case the said Mary Curtiss shall survive him, then to the said Mary Curtiss, her heirs and assigns, forever ; but in case the said Mary Curtiss should die in the lifetime of the said James Curtiss, then to the use of such persons, for such estates and charges as the said Mary Curtiss, by her last will and testament in writing, or by any writing in the nature of or purporting to be her last will and testament, executed in the presence of three witnesses, should direct, limit or appoint; and, in default thereof, then to the use of her heirs and assigns forever—but so that in no event whatever shall the said James Curtiss have or exercise any authority, power, right, or estate in said premises."

" In testimony whereof," etc., signed " Harrison Gray " and " Clarissa Gray ;" and then follows an acknowledgment, in due form, before a notary public in the city of Boston. The deed is dated August 10, 1843, and acknowledged on the 28th of same month.

The bill then proceeds to state, that it was the intention of orator and oratrix to have said conveyance so drawn and executed as to secure to oratrix said blocks 44 and 45 as her property, to the same extent as her right of dower in the several parcels of land would have been secure had the same not been relinquished to said Gray, and so that the same might have been disposed of by her to the same extent as her right of dower might have been ; and that said deed was drawn up under direction of orator and oratrix for that purpose and no other; that neither said Brown, Gray, or any other person, contributed any part of the consideration of said conveyance, or are in any way interested therein, except in consenting to receive the legal title for the use and benefit of oratrix. That said blocks 44 and 45 have become of great

value, and are so situated as to be entirely unavailable and unproductive to oratrix, and that the interest of oratrix would be promoted by a mortgage or sale thereof, and the application of the proceeds to some productive property, business or pursuit; that orator and oratrix have frequently applied to said William H. Brown to sell or mortgage the land so conveyed to him, in trust, in order that the proceeds might be invested in productive property or business, but that he has refused to comply with their request, pretending that by the terms of said conveyance to him, said property should remain in his hands until the contingencies mentioned in said deed should occur.

The bill then charges, that said conveyance was not intended to operate further or otherwise than to secure to oratrix the same sole rights and property in said blocks 44 and 45 which she had of dower and relinquished to Gray in consideration of the execution of said conveyance; and that a sale or mortgage of said premises would be of great advantage to oratrix; and concludes with the following prayer: " That the said blocks forty-four (44) and forty-five (45) in Carpenter's Addition aforesaid, may be decreed to be sold, mortgaged or disposed of, and that said William H. Brown thereupon make, execute and deliver all necessary conveyances to perfect such sale or mortgage;" and for general relief.

William H. Brown, as defendant, filed a stipulation, waiving service of process, entering his appearance, and consenting to a rule upon him to plead, answer or demur *instanter.*

On the same day of the filing of the bill, a rule was entered, by consent of defendant, that he plead, answer or demur to said bill by the coming in of court on the next Tuesday morning.

The default of Brown was entered for want of an answer, and the bill taken for confessed, and referred to the master in chancery to take proofs of the facts and report the same to the court, with special order for the examination of complainant James Curtiss and defendant Brown as witnesses.

The master filed his report, containing the testimony of Stephen F. Gale, and the examinations of defendant Brown and complainant James Curtiss.

*Stephen F. Gale* states, that he was acquainted with Harrison Gray, and also with defendant Brown; and that he knew the facts connected with the execution of the conveyance by said Gray to said Brown; that Gray, as an assignee of Wm. Hyde, became the owner of a number of blocks of land in Carpenter's Addition to Chicago, in 1842 or 1843; and at that time the wife of complainant held an inchoate right of dower in all of said lands; " and in consideration of her release of such interest, and in order to procure it, the said Harrison Gray executed to the defendant the conveyance mentioned in the bill." There was no other consideration for the conveyance than said release of dower. Mr. Gray had no interest in controlling the property after it passed from him to Brown; he was not even acquainted with Mrs. Curtiss; the negotiations for the conveyance, so far as I know, were conducted solely by Mr. Curtiss, and the conveyance was so made by his consent and direction; Mr. Gray had no interest in the subject, any further than in procuring the release of dower, and it was purely a question of business with him.

The defendant *Brown*, on his examination, stated, that he gave no consideration of money or otherwise to Gray for the deed executed by Gray to him for the benefit of Mrs. Mary Curtiss, wife of James Curtiss; that he had no knowledge of the transactions, except that he was requested to act as trustee for Mrs. Curtiss, and consented; that the request was probably made by Mr. Curtiss, though he has no recollection of the fact; that he has no objection to the granting of the prayer of the bill, and knows no reason why it should not be granted.

*James Curtiss*, on his examination, stated, that the bill of complaint in this cause was drawn by him, and that he knew the facts set forth in it to be true. That the deed mentioned in the bill was made to Wm. H. Brown, by his consent and direction, upon consultation with Mary, his wife. That he spoke to Mr. Brown about receiving the title as trustee, before the deed was drawn up, and he consented. That his (Curtiss') object in having the title made to Mr. Brown, was to secure his wife an equivalent for the release of her dower in the other real estate held by Harrison Gray, as stated in the bill—

his own circumstances being at that time embarrassed. Thinks the consideration to Gray may have been a quit-claim deed, signed by himself and wife jointly; he had no interest in controlling the property after the title left him, and would as readily have executed a deed to witness, for the property so conveyed to Brown, as to him, if such had been the desire of witness and his wife. Nobody saw the wife of witness about the transaction but himself. The deed was drawn here under the direction of witness, and, after being submitted to him, was sent to Mr. Gray, who then resided in Boston, and was there executed by him and his wife, and returned to witness. There was no consideration given for the conveyance, either direct or indirect, except the deed executed by witness and his wife to Gray, before referred to.

Upon the foregoing testimony, the master reported the following facts as proven:

1. That previous to the execution of the deed by Gray to Brown, Gray owned several blocks of land in Carpenter's Addition, to which Mary Curtiss had an inchoate right of dower.

2. That in order to obtain her release of dower to the real estate so held, Gray agreed to and did convey the property described in the deed to Brown, in such manner and form, and upon such terms, as the said Mary and James Curtiss should require; this was to be, and was, the sole consideration of the conveyance to Brown, and the deed was accordingly so made.

3. That the deed was drawn up under the direction and with the advice of said James Curtiss, with the concurrence and consent of Mary, his wife; and, having been drawn, was sent to Mr. Gray at Boston, there executed by him, and returned to Mr. Curtiss.

4. That Gray had no interest in controlling the title to the land, and that the trusts created in the deed, were so created by the desire of said James and Mary Curtiss, and not by him; that it was merely a business transaction with him, and he would have executed any other deed, if such had been requested by the parties interested.

Upon the report of the master, a final decree was entered in said cause, which, after reciting substantially the facts found and reported by the master, proceeds as follows:

" And it further appearing, to the satisfaction of the court, that the complainants desire to control the said premises more effectually than can be done through the intervention of a trustee, and it further appearing that the said trustee and the said *cestui que trust* are desirous the trusteeship should be set aside, and that the legal title to the said premises should be vested in the said complainants, or in such other person as the said Mary Curtiss may direct; it is, therefore, on motion of said complainant's solicitor, ordered, adjudged and decreed, that the said blocks forty-four (44) and forty-five (45), in Carpenter's Addition to the city of Chicago, as set forth in the complainants' bill of complaint herein, be sold or mortgaged, as the said complainant Mary Curtiss may in writing direct; and that upon such sale or mortgage, the said William H. Brown execute and deliver all necessary and proper conveyances to the purchaser or mortgagee. And it is further ordered, adjudged and decreed, that the proceeds of such sale or mortgage be paid over to the said complainant, Mary Curtiss, or to such person or persons as she shall in writing direct and appoint. And it is further ordered, that the said complainants pay the cost of this proceeding."

The errors assigned are:

That the court below erred in rendering a decree in favor of James Curtiss, and nominally in favor of, but really against the complainant in error, she being a *femme covert*, without her consent or examination in court or otherwise, upon the request and at the instance of said James Curtiss, whereby the separate property of complainant in error was changed or modified, and put within the control of said James Curtiss, contrary to the provisions of the deed securing to her said property.

That by the decree, the court below, without any allegation or proof of fraud or mistake, or other grounds of equitable interference, undertook to set aside and annul the provisions of a deed made for the benefit of the complainant in error, a

married woman, without her consent or examination, and upon the petition of her husband alone.

That the bill of complaint does not set forth or show any such facts or circumstances as authorized the court below to make such decree.

That it appears from the statement of the bill of complaint, that the court had no jurisdiction of this cause, nor power or authority to grant the relief prayed for.

That the court below erred in granting the prayer of said bill, when the relief prayed for should have been denied and the bill dismissed.

SCATES, McALLISTER & JEWETT, for Plaintiff in Error.

The points in this case arise upon the following provisions in a deed of trust made by Harrison Gray to William H. Brown, as a trustee for Mrs. Mary Curtiss, made during the lifetime of her husband, upon the consideration of her relinquishment of her right of dower in divers lands purchased by Gray, of her husband, namely:

" To have and to hold the above granted premises, with all my right, title, interest and estate in and to the privileges and appurtenances to the said land and tenements belonging, to him the said William H. Brown, and his heirs, during the joint lives of Mary Curtiss, and James Curtiss, her husband, upon trust to pay the rents, issues and profits thereof, to the said Mary Curtiss, or to such person or persons as she, by writing, should direct to receive the same, during the joint lives of the said Mary Curtiss and James Curtiss, for her sole and separate use, so that the said Mary Curtiss shall not sell, mortgage, charge or otherwise dispose of the same in the way of anticipation; and from and immediately after the decease of the said James Curtiss, her husband, in case the said Mary Curtiss shall survive him, then to the said Mary Curtiss, her heirs and assigns, forever; but in case the said Mary Curtiss shall die in the lifetime of the said James Curtiss, then to the use of such persons, for such estate and charges, as the said Mary Curtiss, by her last will and testament in writing, or by any writing in the nature of or purporting to be her last will

and testament, executed in the presence of three witnesses, should direct, limit or appoint; and in default thereof, then to the use of her heirs and assigns forever—but, so that in no event whatever shall the said James Curtiss have or exercise any authority, power, right, or estate in said premises."

The intent is plain, and conveyed in unmistakeable language. In this, as in all other cases, the intention must prevail. The suggestion or allegation that this conveyance was a mere business transaction with grantor, and he would have inserted any other provisions as readily as those inserted—having no design or desire to make any particular provision or settlement—cannot invest the court of chancery with jurisdiction to reform, modify or change the trust, nor can it weigh with the court.

It matters not, whether the settlement was of a stranger's gratuity, or upon consideration moving from the husband or wife; the powers and interests of the wife and husband are equally controlled by the terms and provisions of the trust.

The consideration here moved from the wife, and consisted in her inchoate right of dower in her husband's lands. He had not, and in the nature of things, and of this inchoate interest, he could have no right to reduce it to possession, and enjoy it during his lifetime; for it could only arise upon his death. The consideration given was, then, one to which he could lay no claim on the ground of marital right; nor could he, equitably, lay any such claim to reduce to possession personal or real property, acquired in absolute ownership, upon consideration of removing that right as an incumbrance. The husband can, therefore, set up no equities to this property. It is equitably hers, and hers alone. The legal title it conveyed to a trustee for her use and benefit, at the instance, and by a deed prepared, drawn up, and dictated by the husband, securing her a life interest in the rents, etc., during their joint lives, and a fee on her survivorship—with apt words to prevent her disposition of the income by way of anticipation. The fee is limited over—and so that the husband shall not " have or exercise any authority, power, right or estate in said premises."

The main objection to the decree and proceeding is, that the court had no jurisdiction in the premises, and that the whole are utterly null and void. To establish this proposition to the satisfaction of the court, I shall make the following points:

1. The court has no jurisdiction to divest the wife of her separate property, real, personal, or mixed, by its own voluntary decree, without her act or consent. *Kinney et al.* v. *Greer*, 13 Ill. 432.

This case is distinguished from all the cases in the books, in several particulars. This is not a disposition by deed, will or parol, made by the wife—but an attempt to make a disposition for her by decree of the court. Cases may be found where courts have by decree carried the wife's disposition into effect; but none where the court has made a disposition for her by decree.

The case of *O'Kate* v. *Calthorpe*, cited in *Sperling* v. *Rochfort*, 8 Ves. Jr. R. 177, was a settlement of annuities on the wife for life, and in case she survived her husband, then to her absolutely; but, in case of her dying before her husband, then according to her appointment by deed or will. The bill was filed to change the trustees, and to apply part of the fund as the wife should appoint. The Lord Chancellor said "there was no ground to break in upon the marriage agreement, and take away the interest; if she had any power over the principal, let her make an appointment, and he would consider the effect of it; but would not interpose upon her coming into court."

This doctrine was sanctioned in *Sperling* v. *Rochfort*, 8 Ves. Jr. R. 174.

2. The court has no jurisdiction to dispose of the wife's interest, without her consent, and the court will not presume such consent, but will require her examination, either in open court, or to be taken before the master, before it will make any decree affecting her separate property.

This point is abundantly fortified by authority.

When courts of equity are asked to interfere with the wife's separate property, in favor of the husband, they will do it with great caution. "They will examine the wife in court,

Curtiss *v.* Brown *et al.*

and adopt other precautions to ascertain her unbiased will and wishes." 2 Story Eq. Juris., sec. 1395.

In cases where absolute property or power over it is given to the wife, Lord Hardwicke says, " that he had been informed it was very constantly the course of the court, and particularly at the Rolls, where these cases came on, that where the trustees oblige the party to apply to the court, it had not established a deed between husband and wife, upon her separate estate, without her actual presence in court." 2 Roper on Husband and Wife, 217 ; *Milnes* v. *Burk*, 2 Ves. Jr. R. 500.

By the settlement in *Pybus* v. *Smith*, 1 Ves. Jr. R. 193, absolute power was given over the estates to the wife, and yet the court would not sanction her disposition of them, without an inquiry as to her understanding and intending what she did.

The court will not put the wife's disposition of her separate property to her husband, upon the same footing of a *feme sole*, but will require her examination in open court. *Milnes* v. *Burk*, 2 Ves. Jr. R. 498, 500 ; *Whitall* v. *Clark et al.*, 2 Edw. R. 149.

The case of *Essex* v. *Atkins*, 14 Ves. Jr. R. 542, also gave a like absolute control to the wife.

In *Blackwood* v. *Norris*, cited in Cas. Temp. Talbot, 43, £4,000 had been devised in trust for the wife's separate use, and the Master of the Rolls would not allow the trustee to pay the husband, on a bill filed, although the wife was in court and consenting.

3. The court had no jurisdiction to order a sale of the fee in this case, by the trustee ; because the wife had never consented to the same; because she had no power over the estate, with or without consent—all she could have disposed of, would have been her life estate in the rents, etc. ; and because the deed expressly took away any power by anticipation in the rents, or in the fee estate.

The decree in this case did not cut off her right. The wife's personalty, moneys and choses in action, are not reduced into possession, so as to take away her right of survivorship, by obtaining a decree or judgment of them. Clancy on Married Women, 119, 120.

The power of the wife to consent in court to the disposition of her right to personalty, arising upon her survivorship, has been both doubted and denied. 1 Roper on Husband and Wife, 246.

In *Caverley* v. *Dudley and Brisco*, 3 Atk. R. 541, there were no words restraining the wife's power over the property, yet the court said, " It was not the intention of the grantor that the wife should anticipate the produce of her estate, by raising money upon it, and words should have been thrown into it to restrain her from doing it; but as there were no such words, she might raise money by way of loan, *but not by way of annuity for her life, as it was too large an anticipation.*"

In *Jones* v. *Harris*, 9 Ves. Jr. R. 494 to 498, Lord Eldon very emphatically condemns arbitrary alterations of the terms of the contract, and as the annuity which she attempted to charge upon her estate was void for want of compliance with the statute, the court refused to enforce repayment of the money paid for it, as a general charge upon the separate estate as a creditor. This is a strong condemnation of the assumed power to alter or make contracts for parties.

In *Ellis* v. *Atkinson*, 3 Brown C. C. 347, note and page 565, S. C. Dick. R. 759, Lord Thurlow doubted very much whether, upon a settlement in trust that the interest of money in the funds be paid into the hands of the wife, or as she should, by writing, from time to time appoint, he could even accept of the wife's consent in court, on a bill by husband and wife, to carry into effect an agreement of theirs, by a sweeping disposition by deed, that the interest for their joint lives should be paid to the husband.

To obviate the tendency of the decision allowing the wife to dispose of her separate property as a *feme sole*, Lord Thurlow introduced a clause into the settlement in these words, " *and not by anticipation,*" to prevent these sweeping dispositions. He held such a provision valid and sufficient to restrain her; and so did Lord Alvanley and Lord Eldon.

The language of the restraining clause of this deed is stronger, and would be sufficient to defeat the jurisdiction, if there were no other question in this case.

In *Socket et ux.* v. *Wray*, 4 Brown C. C. 485, stock was settled in trust by deed, to which husband and wife were both parties, to pay the dividends to the separate use of the wife, with power to dispose of the stock by will. The husband and wife sought by bill to compel the trustees to sell the funds and pay the moneys to the husband. The Master of the Rolls, Lord Alvanley, held that she could not waive the benefit of the settlement and give away the capital; and that she could only dispose of it in the mode provided in the settlement. He held that the wife had no disposing power but what was given her by the deed, and he meant to question the decision in the cases of *Newman* v. *Cartony*, *Hulme* v. *Tenant*, *Ellis* v. *Atkinson*, and *Pybus* v. *Smith*.

So he held in *Hyde* v. *Price*, 3 Ves. Jr. R. 437, where the husband had settled an allowance for their joint lives, on the wife, by way of separate maintenance, that the wife could not grant an annuity out of the dividends. Lord Rosslyn concurred with Lord Alvanley, and doubted the doctrine of allowing the wife the same power as a *feme sole*, over her separate property. See *Milnes* v. *Burk*, 2 Ves. Jr. R. 488.

And in *Whistler* v. *Newman*, 4 Ves. Jr. R. 129, he held, that where a mode is prescribed, it must be pursued, and he dissented from the doctrine of the contrary cases.

And so in *Mores* v. *Huish*, 5 Ves. Jr. R. 692, although the deed of settlement did not prescribe any mode of disposition, but settled the rents of a freehold estate solely at her disposal, yet Lord Rosslyn refused to aid a purchaser on a bill filed by him.

Lord Eldon, in *Jones* v. *Harris*, 9 Ves. Jr. R. 497, considers the question as open, doubtful, and deserving a very full review, whether the property can be disposed of in any other way than that prescribed.

In *Hovey* v. *Blakeman*, cited in *Wagstaff* v. *Smith*, 9 Ves. Jr. R. 524, Sir Wm. Grant, Master of the Rolls, dismissed a bill for an annuity out of rents, etc., because the settlement did not give to the *cestui que trust* an absolute power over these rents.

So in *Lee* v. *Muggeridge*, 1 Ves. and Beame R. 118, the

settlement was to pay rents, etc., to the separate use of the wife, during the joint lives of herself and husband; and in case she survive, then to her and her heirs; and in case he survive, then to such persons and for such estates as she, by will, or a writing purporting to be her last will, executed in the presence of three witnesses, should appoint.

The court, referring to the case of *Heatley* v. *Thomas*, says: "There was not, as here, an express provision, that in the event of the wife surviving, the property should be absolutely hers, which implies an exclusion of a power of so appointing it during the coverture as that it should in that event belong to her; and further, it was to be collected from the whole instrument, that she was to have a power, not only of appointing by will, but of disposing of the fund in any other manner. There is, therefore, little or no resemblance between the two settlements; but this case falls precisely within the decision of *Richards* v. *Chambers*, where the settlement was, at least in the particular in question, precisely the same as this, in trust for the sole and separate use of the wife for life; and if she survived her husband, it was to be absolutely hers; if she died in his lifetime, it was, in default of her appointment, to go to her executors and administrators.

"It is unnecessary for me to repeat the reasons upon which I held, in that case, that, where a married woman expressly stipulates that in the event of her surviving, the property shall become hers, reserving no power of stipulation over it during the coverture, there are no means by which she can dispose of it, while she remains covert."

The Vice-Chancellor, in *Francis* v. *Wigzell*, 1 Madd. Ch. R. 147, said, "A *feme covert*, having separate property to her own use, may, generally speaking, dispose of it as a *feme sole;* but if the instrument by which she acquires it prescribes any particular mode in which she must part with it, her disposition of the property must be according to the terms of such instrument."

In *Richards* v. *Chambers*, 10 Ves. Jr. R. 580, the question was as to the jurisdiction of the court of chancery to direct a transfer of the wife's personal property, settled in trust in absolute ownership, if she survive her husband.

The Master of the Rolls held, upon examination of the authorities, that the court had no such jurisdiction to do so, even upon examination of the wife in open court.

The question is fully put, broadly met, examined, and jurisdiction denied, after examining all the authorities.

The court likewise refused to act in a bill for the same purpose, in *Fraser* v. *Baillie*, imperfectly reported in 1 Brown C. C. 518, to which there is a valuable note. It is shown in this note that the cases of *McCormick* v. *Buller*, *Ellis* v. *Atkinson*, and *Guise* v. *Small*, are not regarded as law.

The power to take the wife's consent to dispose of her personal property, is urged upon the analogy of the proceeding at law by fine to bar her right and estate. Courts of equity have no power or jurisdiction to bar or transfer title of wife to real estate by examinations in open court or otherwise; and no counsel has ever asserted it in argument, nor has any court ever so decided. It is only in cases of personal property and leaseholds that the courts have taken examinations, and carried agreements into effect.

The distinction, as to what the court may do, is further well stated in the above note to 1 Brown C. C. 518, taken from Mr. Roper's work on Husband and Wife. Pursuing the analogy between law and equity, the power of the husband at law over his wife's personal property is limited to such part as can possibly be reduced or fall into possession during coverture.

So where she stipulates that, in the event of her surviving her husband, her property shall become her own, reserving no power of disposition over it during the coverture, neither her husband, nor she during his life, can dispose of it by deed, will, consent, or charge. The principle is the same where the property is so given or left to her.

If the wife have a power to appoint the fund, in the case of her death before her husband, having also the fund given to her if she survive him, neither the execution of the power, nor her assent to give up her latter interest, will deprive her of it: not the former, because it does not extend to the interest she takes on surviving her husband: not the latter, be-

cause during coverture she cannot consent to pass that which never could be reduced into possession by the husband during the marriage.

These premises are supported by the cases reviewed above. *Frazer* v. *Bailie ; Richards* v. *Chambers ; Seaman* v. *Duill*, 10 Ves. Jr. R. 580; *Lee* v. *Muggeridge*, 1 Ves. and Beame R. 118; *O'Kate* v. *Calthorpe*, cited 8 Ves. Jr. R. 177, and *Nevison* v. *Longden*, in Exchequer in 1800, cited 8 Ves. 173, 10 Ves. 585.

There is and can be no case, by analogy or otherwise, for a court of equity to interfere or pretend to any jurisdiction to sell and transfer the wife's lands by decree, with or without an examination in open court, even where she holds title in which she has a present estate, and can exercise a power of disposition in the mode provided by law. She can only transfer or convey by deed, in which her husband shall join. Courts of equity have no power or jurisdiction to enable or enlarge the wife's power over her real estate, or to change the mode in which she must convey it. The legislature alone possesses that power. The common law mode of conveyance, by fine, is obsolete, and was never in use among us.

But here the power and estate were neither in her. The estate was in a trustee, and he could exercise no power beyond that given by the deed. She could confer none by consent, because the deed expressly took away all power over the fee by anticipation, and which had not and would not vest in her until the expiration of the life of her husband, and then only in case she should survive him.

The high court of chancery in England never pretended to claim or exercise any such power over the real estate of the wife.

The case of *Sturgis* v. *Corpe*, 13 Ves. Jr. R. 190, like all the others, was a case of personal property, and the court puts the case upon the ground that she had a complete power over it, without an examination, unless restrained by the deed of settlement. This was in 1805; so was *Wright* v. *Morley*, 11 Ves. Jr. R. 17.

But the doctrine laid down as to the wife's power over a re-

versionary interest, is contradicted and reversed in a case twelve years later—in 1818—*Pickard* v. *Roberts*, 3 Maddock's R. 385, and the court say they will not lend any aid to the husband to get possession of the wife's personalty where he is not entitled to it at law.

And again so ruled in 1828, in *Hosmer* v. *Morton*, Russ. R. 65, 88 ; and in 1836, in *Stiffe* v. *Everitt*, 1 Mylne & Craig, 37. In *Stamper* v. *Barker et al.*, 5 Maddock R. 157, a wife, being entitled to a present and also to a certain other contingent interest, made a deed of separation with her husband and father, retaining her present and part of her contingent interest in the personalty, and giving her husband a part of the contingent interest. Held, that the deed was a nullity as to the wife.

Similar decisions were made in *Beckett* v. *Beckett*, 1 Dickens R. 541, as to a vested interest, unless for value received ; nor would a general assignment in bankruptcy be considered as reducing a legacy of stock into possession.

*Milford* v. *Milford*, 9 Ves. Jr. R. 87, and in *Wright* v. *Morley*, 11 Ves. Jr. 17, that she would be entitled against a purchaser for a valuable consideration. *Gray* v. *Kentish*, 1 Atk. R. 280.

The wife is not bound by the voluntary assignment of the husband in case she survive him, as to those equitable interests that he might have reduced into possession. *Burnett* v. *Kinnaston*, 2 Vernon R. 401.

There are all cases of personal property or choses in action, reducible by the husband, or in which the wife attempted to make a disposition by agreement.

The question as to the power of the wife to dispose of her interests as a *feme sole*, where there was no provision in the settlement restraining her, is, by the English decisions, as Lord Eldon said, unsettled, confused and distracting, and he candidly admits that his own mind was in great distraction upon the subject. His own mind inclined to limit her power to the terms of the instrument, when a mode is prescribed ; and Lord Thurlow strongly inclined to the same doctrine, and he thinks the question is one doubtful, and deserving of a very

full review, as to her power being other than prescribed in the instrument.

The English authorities have been classified by Judge Clayton in a very learned argument, in *Morgan* v. *Elam*, 4 Yerger R. 399, 400—viz.: 1st, cases in which a general power was expressly given—some twenty cases; 2nd class, cases in which a particular power to dispose by will only was given; and 3rd class, cases in which no power was given. Taking a review of the whole, Lord Eldon says, "upon all those cases together, it is utterly impossible to know the result." *Sperling* v. *Rochfort*, 8 Ves. Jr. R. 174.

Judge Catron says, in the above case of *Morgan* v. *Elam*, page 450, "There are two classes of cases which lay down different rules. The one, that a married woman with separate property has no power over it but that which is conferred on her by the settlement. *Lord Strange* v. *Smith*, Amb. R.; *Locket* v. *Wray*, 4 Brown; *Whistler* v. *Newman*, 4 Ves.; *Mores* v. *Huish*, 5 Ves.; *Harvey* v. *Blakeman*, 9 Ves.; *Francis* v. *Wizgle*, 1 Maddock's R. 6.

"The other class lays down the rule that a *feme covert* with separate property, is to all intents a *feme sole*, except as far as she is restrained by the instrument under which she claims. *Pybus* v. *Smith*, 1 Ves.; *Fettiplace* v. *Gorges*, 3 Brown; *Wilts* v. *Dawkins*, 12 Ves.; *Brown* v. *Lake*, 14 Ves.; *Essex* v. *Atkins*, 14 Ves., the case cited from New York by Judge Green."

Chancellor Kent, in the *Methodist Episcopal Church* v. *Jaques*, 3 John. Ch. R. 87, 114, reviewed all the authorities, and concluded from them that the wife may exercise the general power of disposition as a *feme sole*, "unless her power of disposition be restrained by the deed or will under which she became entitled to it." But where a particular mode is prescribed, the chancellor argues to show that it must be pursued, and no other disposition ought to be enforced. Pages 97 to 115.

Much less ought an alienation to be allowed when the settlement expressly forbids it. Pages 102 to 115.

He concludes that the settled rule is, by the authorities,

that the intention must prevail, and the property be disposed of in the way prescribed in the deed of settlement.

Although this case was reversed by a divided court in the Court of Errors (John R. 548), yet the whole current of American authorities fully sustain it. It is fully supported by *Ewing et al.* v. *Smith et al.*, 4 Desaus. 455; *Morgan* v. *Elam*, 4 Yerg. 375; *Williams* v. *Beckham*, 8 Leigh. 20; *Lancaster* v. *Dolan*, 1 Rawle R. 231, 238; *Thomas* v. *Folwell*, 2 Whart. R. 11; *Watson* v. *Chesire*, 1 McCord Ch. R. 233—241; *Magwood* v. *Johnston*, 1 Hill Ch. R. 228—231; *Clark* v. *Makenna*, Cheves Eq. R. 163; *Robinson* v. *Dart's Ex'rs*, Dudley Eq. R. 128—131; *Helms* v. *Franciscus*, 2 Bland Ch. R. 562; *Swift* v. *Castle*, 23 Ill. 209.

And also by many English cases, among which I cite, *Peacock* v. *Monk*, 2 Ves. Sr. R. 190; *Penne* v. *Peacock et ux.*, Cas. Temp. Talbot, 43; *Hulme* v. *Tenant*, 1 Brown C. C. 16; *Lord Strange* v. *Smith*, Ambler R. 263; *Locket* v. *Wray*, 4 Brown C. C. 483; *Whistler* v. *Newman*, 4 Ves. Jr. R. 129; *Mores* v. *Huish*, 5 Ves. Jr. R. 692; *Harvey* v. *Blakeman*, cited, 9 Ves. Jr. R. 524; *Francis* v. *Wigzel*, 1 Madd. Ch. R. 145;—which confine her power to what is conferred by the settlement.

And it is further supported by that class of authorities which limit her power as it may be restrained by the settlement, as *Pybus* v. *Smith*, 1 Ves. Jr. R. 189; *Fettiplace* v. *Gorges*, 3 Brown C. C. 8; *Wilts* v. *Dawkins*, 12 Ves. Jr. R. 302; *Brown* v. *Lake*, 14 Ves. Jr. R. 302; *Essex* v. *Atkins*, 14 Ves. Jr. R. 542; *Richards* v. *Chambers*, 10 Ves. Jr. R. 580; *Lee* v. *Muggeridge*, 1 Ves. and Beame R. 118; *Sperling* v. *Rochfort*, 8 Ves. Jr. R. 164; *Milnes* v. *Burk*, 2 Ves. Jr. R. 488.

Most of the cases in England arose upon settlements of personal property, etc. The question of freehold rents was presented in one or more.

4. The court of chancery has no jurisdiction to order the execution of a discretionary power without an interest.

The Lord Chancellor, in *Hulme* v. *Tenant*, 1 Brown C. C. 21, said: "I do not find the court has ever ordered a power

to be executed. They have industriously stopped short of so doing, and have only given a remedy by stopping the fund, where the power was executed; therefore, I cannot order the *feme covert* to execute her power."

Lord Eldon also held, in *Thorpe* v. *Goodall*, 17 Ves. Jr. R. 460—462, that the court would not compel a bankrupt to execute a power. 1 Story Eq. Juris., sec. 169.

The high court of chancery in England never had claimed or exercised jurisdiction to dispose of, or alter, or modify the right, title, or estate of a married woman, her separate estate in lands or freehold property, whether the title was in her or a trustee to her use; of present contingent estates, in possession, or remainder, or reversion.

This brings me to the second point, and main question in this case, which is:—

The court of chancery has no power or jurisdiction over the real estate of a *feme covert* in possession, reversion, or remainder, absolute or contingent, whether for life or in fee, to alter, limit, or bar her title, or to transfer the same by decree or by sale; nor can the court authorize or enlarge the powers of a *feme sole* to do so, contrary to a deed or settlement.

The power to bar an estate in the wife or issue, and as a common assurance, was by fine and recovery in the common law courts, and not in chancery, and that, as a mode of conveyance and as a remedy, is obsolete, and is little known or used in the United States. 4 Kent Com. 497.

Fines and recoveries have been repealed in England by 3 and 4 Wm. IV, cap. 74, and a disposition of a married woman, by deed, is substituted. So in this State, the mode of conveyance of the estate of a married woman has ever been by deed, under our local statutes, and is so still. Cooke Stat., page 963, sec. 17, page 965, sec. 2.

In *Mores* v. *Huish*, 5 Ves. Jr. R. 692, although the deed of settlement did not prescribe any mode of disposition, but settled the rents of a freehold estate solely at her disposal, yet Lord Rosslyn refused to aid a purchaser on a bill filed by him.

Although Lord Chancellor Thurlow, in *Hulme* v. *Tenant,*

1 Brown C. C. 16, allowed an account to be taken of the rents, etc., of a leasehold estate, to be applied to a bond given by the wife for her husband's debts, yet he would not extend it to the rents, etc., of her separate freehold estate contained in the same settlement.

In *Peacock* v. *Monk*, 2 Ves. Sr. R. 190, Lord Hardwicke said, in reference to the wife's power over each kind of property under deeds of settlement, " As to personal, undoubtedly, where there is an agreement between husband and wife, before marriage, that the wife shall have to her separate use, either the whole or particular parts, she may dispose of it by an act in her life, or will : she may do it by either, though nothing is said of the manner of disposing of it ; but there is a much stronger ground in that case than can be in the case of real estate, because that is to take effect during the life of the husband ; for if the husband survives, he is entitled to the whole, and none can come into a share with the husband, on the statute of distribution. Then such an agreement binds and bars the husband, and consequently bars everybody. But it is very different as to real estate, for her real estate will descend to her heir-at-law, and that more or less beneficially ; for the husband may be tenant by the curtesy, if they have issue, otherwise not; but still it descends to her heir-at-law. Undoubtedly, on her marriage, a woman may take such a method, that she may dispose of that real estate from going to her heir-at-law; that is, she may do it without a fine; but I doubt whether it can be done, but either by way of trust or of power over a use. In the first instance, suppose a woman having a real estate before marriage, and either before or after marriage, by a proper consequence (if after marriage, it must be by fine) conveys that to trustees in trust for herself, during her coverture, for her separate use ; and afterwards that it should be in trust for such person as she shall by any writing under her hand and seal or in the nature of a will, appoint; and in default of appointment, to her heirs ; she marries and makes such an appointment as that described, that is a good declaration of the trust ; and this court would support that trust; and it could never be a conveyance to the

heir-at-law against this direction to the trustees." After
observing that it had been held that a *feme covert* could
execute a power, the chancellor inquires and proceeds, "But
can a *feme covert* do this so as to bar her heir, by a bare
agreement, without doing anything to alter the nature of the
estate ?   Can a woman, having a real estate before marriage,
in consideration of that marriage, enter into an agreement
with that husband, that she may, by writing, under her hand,
executed in presence of witnesses, or by will, dispose of her
real estate ?   This rests in agreement; and if she does it,
though it may bind her husband from being tenant by the
curtesy, that arises from his own agreement; but what is that
to the heir-at-law?   Still she is a *feme* under the disability of
coverture at the time of the act done; and if she attempts to
make a will, the instrument is invalid.

" The only question that could arise would be, whether such
an agreement between her and her husband would not give
her a right to come into a court of equity, after the mar-
riage "—(to do what? not to get a title, or decree for title or
sale, or decree for conveyance—for equity can do neither of
these things—but for a personal decree against the husband,
in the nature of a decree for specific execution, to compel him to
do at law what is necessary to convey title)—" to compel the
husband to carry this into execution and to join with her in a
fine to settle the estate, either on such trusts, or to such and
such uses ; and if it is such an agreement as the court would
decree to be farther carried into execution by a proper con-
veyance, then the question may be, whether the heir-at-law is
not to be bound by the consequences of that agreement.
But that is the only way by which it could be brought in.
But if the agreement cannot be carried into execution, though
she may have power to bar her husband, it being a voluntary
claim from her, and the law casting the descent on her heir-
at-law, I very much doubt how it could be done."

A case before the council was cited at the bar in the above
case, in which the distinction was held between personal and
real estate, and " it turned singly on this, that a woman who
had a real estate to her separate use, should not be in equity

considered as the absolute owner of it; and that there was no precedent of it, though several as to personal; that this determination at the council had been the subject of a good deal of discourse; it seeming extraordinary that she should not have this in equity, as incident to her ownership "—that is, the power to make a will to dispose of it.

The distinction came up again in *Lancaster* v. *Dolan*, 1 Rawle R. 247. C. J. Gibson, in alluding to the unsettled and contradictory decisions in England since the Revolution, as to the power of the wife as a *feme sole* over her separate estate, said: " But it is agreed on all hands that her power is not to be extended beyond her personal estate and the profits of her land. She has not, in a single instance, been permitted to lay her hands upon the inheritance. There is indeed no case in which the question involved the exercise of a power over her own life-estate; but if her power does not comprehend the fee, when she is the owner of it, it is not easy to understand how it can comprehend a less estate. It has been held to extend to copy-hold, because the estate can be surrendered by her act; and as she is exclusively the tenant, and the husband's authority is suspended, it seems there is no objection to her act in the court of the manor. But there is no instance of her having been permitted to dispose of freehold, except in pursuance of the terms of the trust, or by way of power over a use. *Peacock* v. *Monk* (2 Ves. Sr. R. 190) is express to the point."

Though there was no limitation upon the power, yet the court found such to be the intention, and concurred in Chancellor Kent's views in *Methodist E. Church* v. *Jaques*; 3 John. Ch. R. 108.

In argument, Mr. Mansfield recognized this distinction, in 8 Ves. Jr. R. 174; and so did the chancellor in the same case, page 174.

As the court will not compel a married woman to execute a power (1 Brown C. C. 21; 17 Ves. Jr. R. 460—462; 1 Story Eq. Juris., sec. 169), " where a married woman expressly stipulates that on the event of her surviving, the property shall become hers, reserving no power of disposition over

it, during the coverture, there are no means by which she can dispose of it while she remains covert." *Lee* v. *Muggeridge*, 1 Ves. and Beame R. 118.

And again, in cases of reversionary interests of the wife in personal property, "no assignment by the husband, even with her consent and joining in the assignment, will exclude her right of survivorship in such cases." 2 Story Eq. Juris., sec. 1413, and authority there cited.

In Pennsylvania, the common law conveyance by fine and recovery was not abolished until 1835, and the doctrine above laid down by Chief Justice Gibson was in 1829, while that mode of barring future estates remained as a remedy by conveyance of record.

The power contained in the deed must be strictly pursued. 1 Brown C. C. 16; 4 Brown C. C. 487, and note E; 9 Ves. Jr. R. 182; 8 Leigh, 20.

And in respect to her separate property, she is only so far to be treated as a *feme sole* as she is made so by the deed or instrument creating her separate estate. 1 John. Ch. R. 450; 4 Yerg. R. 375, 393, 402, 447, 448, 454; 3 Desaus. R. 417; 1 Rawle R. 231; 3 John. Ch. R. 113, 114; 1 Ves. Jr. 189; 3 Green Ch. R. 512, New Jersey; 2 Leigh R. 183; 2 Ves. Sr. R. 190.

The wife's power of disposition is not incidental to her separate property, but derived entirely from the authority contained in the settlement. 3 Desaus. R. 417; 5 J. J. Marsh. R. 230; 7 Gill. & John. R. 192; 20 Wend. R. 570; 7 Paige R. 9, 112; 22 Wend. R. 526; 1 Jones & C. R. 255.

Prohibitions against alienation or anticipation are legal and proper, and are sustained by the court. Adams Eq. 187 (side p. 44); 1 Colly R. 57, 138; 1 Phil. R. 627; 1 Beavan R. 1; 4 Myl. & Craig R. 89, 377; 1 Dev. & Batt. C. R. 480.

A voluntary settlement cannot be set aside by the settler, or by a court of equity, on his application. 8 Pick. R. 293; 1 Vern. 100; 1 Atk. R. 625; 2 Vern. 475; 3 Meriv. 270; 1 Equity Cases Abridg. 168; 5 Ves. Jr. R. 862.

Husband and wife joined in a bill to set aside a settlement on the ground of the infancy of the wife at the date of the

settlement. The court refused to do so, although the wife, on privy examination, stated that she joined in the bill of her own free will. *Lee* v. *Stuart*, 2 Leigh R. 76.

The court ordered a conveyance to a trustee in pursuance of an ante-nuptial agreement, although both husband and wife expressed a wish that the conveyance should not be made. *Ganse* v. *Hale*, 2 Ired. Ch. R. 241.

The court has no power to change the contract of the parties. 22 Pick. R. 61; 1 Sandf. Ch. R. 336; *Lowry* v. *Tiernan*, 2 Har. & Gill. R. 34.

Property held under, and conveyed in violation of a trust, will be bound by the trust in the hands of the purchaser. 4 John. Ch. R. 136.

Such, then, are the principles of law, and so stands the question of jurisdiction upon the authorities.

The court has acted upon the assumption that it had a general jurisdiction to dispose of the contingent remainder of a *feme covert*, as to the mind of the chancellor might appear for her interest, notwithstanding any power to dispose of it by " anticipation" was expressly taken away by the deed ; and to allow the husband to take the possession and control of the proceeds, notwithstanding the deed expressly declared that " in no event whatever" should he " have or exercise any authority, power, right or estate in said premises."

And all this was done without an allegation or particle of evidence of any mistake or fraud in the deed or its provisions. And thus, in effect, the court has converted the wife's dower into money, and given the same absolutely to the husband to enjoy and dispose of as his own, in his lifetime.

The parallel of this case is not on record, where, at the instance of the husband, without so much as a formal examination of the wife, the court has assumed jurisdiction, not only to order a conveyance of title, by a trustee, through the forms of a sale, for the ordering of which there is not one solitary suggestion or allegation of a fact which confers jurisdiction to do so, but to do which it is first necessary to make a new deed, or, in other words, to set at naught, utterly, every provision and limitation in the deed under which she claimed.

Courts of equity have no power to order the general or separate real estate of married women to be sold, either for the purposes of the maintenance of the wife, for reinvestment, or for trade. Married women's real estates are not under the general jurisdiction of the chancellor, like that of minor wards of the court. . They are, like minors, equally incapable of making contracts, but not for the same reason or policy of the law. The one lacks a legal discretion; the other lacks a legal separate existence—she is *covert*, legally identified with, merged into a husband, for all purposes of bargaining and conveying. The chancellor may exercise a discretion for the infant ward, but cannot represent, empower, or act for the wife. If her real estate is to be sold or conveyed, it is an act of her own, with her husband, by deed, and passes the estate by operation of law, enforcing her deed or contract. All the chancellor could do, would be, upon a proper case, to compel her husband to join with her in the act, so that her deed might have operation, but it cannot give validity to acts of hers void at law, nor do those acts for her. Neither her wants nor her wishes, neither to avoid loss nor to make gain, will constitute a ground for the intermeddling of the court, to convey, to sell, to convert, change, exchange, modify or alter her interests or estates in lands.

The whole thing is a simple absurdity, a nullity, and stands absolutely void, and as if not done, and incapable of confirmation ; there was no act to confirm ; she did no act, nor consented to any ; she was equally incapable in law of assenting to either, and whatever release was attempted in this case, was obtained while she was *covert*, and equally incapable of executing a release as of making a deed for want of a will and power in the law. The attempt to cover up an illegal and void act of a trustee, under a void order of court, only tends to throw more suspicion upon the whole thing. We ask a formal reversal of the decree, to remove the cloud from our title.

Money paid on void deed of wife may be recovered back. 1 Selwyn N. P., margin 86 ; 7 Mass. R. 31.

A. W. WINDETT, for Defendant in Error.

The direction by Mrs. Curtiss, requiring her trustee, Brown, to sell in pursuance of the decree made for that purpose, and the sale made by her trustee, thus imperatively required to proceed and sell, and her acknowledgment or receipt of proceeds in full, altogether constitute a release of errors, if any, in the decree. She is thereby estopped from alleging error.

*Morgan* v. *Ladd*, 2 Gilm. 414. In this case, the acceptance of the amount of a decree was pleaded in bar, on error brought by the party thus accepting.

*Curia*, per Treat, J. "The plea is good. The acceptance of the money operated as a release of errors; a party who voluntarily receives the benefit of a decree, shall not be afterwards allowed to allege that it was erroneous," ("nor even be permitted to tender back the money.")

So in *Thomas* v. *Negus*, 2 Gilm. 703, the court say, per Treat, J.: "The receipt of the money under the circumstances of the case, necessarily operated as a release of errors." 21 Ill. 267, 604.

The coverture of Mrs. Curtiss, at the date of the transactions pleaded, is no bar of her estoppel resulting from her acquiescence in and voluntary execution of the decree, and receipt of the proceeds.

*Cochran* v. *Harrow*, 22 Ill. 349. This is a case of equitable estoppel, (silence, etc.,) not involving coverture. *Higgins* v. *Ferguson*, 14 Ill. 269.

*Bradley* v. *Snyder*, 14 Ill. 268. In this case, CATON, C. J., applies the same principle to shut the mouth of a *feme covert*, and estop her.

1 Story Eq. Jur., sec. 385. "Neither infancy nor coverture will constitute any excuse, for neither infant nor *feme covert* are privileged to practice deceptions or cheats on other innocent persons." *Davis* v. *Tingle*, 8 B. Monroe, 539; Fonb. Eq., book 1, chap. 3, sec. 1, p. 164; *Savage* v. *Foster*, 9 Mod. 35, 38; *Becket* v. *Candly*, 1 Bro. Ch. R. 353, 358; 2 Sugd. Vend., p. 515, sec. 30, bottom of page 1023.

*Storrs* v. *Barker*, 6 John. Ch. In this case Chan. Kent says that ignorance of the law will not protect any one from

an operation of a rule of equity, when the circumstances would otherwise create an equitable bar. *Corey* v. *Gertchken*, 2 Madd. 51; *Esroy* v. *Nicholas*, 2 Eq. Car. Ab. 489; 8 Texas, 243; *Cravens* v. *Booth*, 9 Texas, 297.

Estoppels are favored when they promote equity. 17 Serj. & Rawle, 364.

The decree cannot be reversed so as to affect the title of the defendants, who are *bona fide* purchasers under it. *Rockwell* v. *Jones*, (case of *sci. fa.* foreclosure), 21 Ill. 279; 17 Ill. 95; Riley's S. C. R. 102; *Grignon's Lessee* v. *Astor*, 2 How. U. S. R. 339.

CATON, C. J. In no possible contingency which we can anticipate, could the estate which was conveyed by Gray to Brown by this trust deed, revert to the grantor; hence there was no necessity to make him a party to the bill. The objection for the want of proper parties cannot prevail.

The most important question presented, and that which is ultimately to have a controling influence on the rights of these parties, is, had the court of chancery jurisdiction or power to entertain the first bill, and to render the decree? If it had no such jurisdiction, then the decree was utterly void, and must be so treated at all times and in all places, and the purchasers acquired no rights or interests under it, but Brown still holds the legal title in trust for the complainant, as if that suit had never been instituted. It is insisted for the plaintiff in error, that the court of chancery has not the power in any case to intermeddle with or touch an estate which is held in trust for a married woman. That the terms of the deed, creating the trust, are like iron bands, rigid and unyielding, and that no human power can unloose or even adjust them, no matter what emergency or necessity may arise, even though they may destroy the whole interest designed for the beneficiary, and created by the deed or other instrument by which it is evidenced. We do not think so great a defect exists in our system of jurisprudence as is assumed by this position. We are not altogether satisfied with the answer given by the defendant's counsel to this question of jurisdiction. He says that because the

court had jurisdiction of the parties who were properly before it, and of the subject-matter which was land, and within its territorial jurisdiction, therefore its jurisdiction was complete, and it had authority to make what disposition it pleased of the land, and of the interests of the parties, so far as the question of power is concerned. This, we say, is hardly satisfactory. There must as well be the necessary averments in the pleadings to bring the subject-matter before the court, before it has any power whatever to render any decree which can affect such subject-matter, or the interests in it of the parties to the suit. If the court of chancery should decree one of its suitors, standing in its presence, to be hanged or sold, that would be void ; or if it should order a piece of land, though within its territorial jurisdiction and belonging to a party to the suit, but not mentioned in the pleadings, to be sold or transferred, that decree would be void, for the want of jurisdiction over the subject-matter. But here there are averments bringing the subject-matter before the court, and stating facts which were supposed to be sufficient to render it proper for the court to interfere, and order the property to be sold, and the proceeds disposed of more to the benefit and comfort of the *cestui que trust*, than to let the fund remain as appointed by the deed of trust. Upon this question of jurisdiction it is of no importance now whether the reasons assigned for the action sought were sufficient to justify the decree or not, but the question is, was it possible for a state of facts to exist which would justify the court in disposing of the subject of the trust, in a mode different from that appointed in the deed ?

This question of jurisdiction does not depend upon the necessities of this case, but if it is possible that such a case might have existed as would authorize the court to break in upon the provisions of this trust deed, and order a disposition of the property not in accordance with its terms, then the power to do so is established. The case might exist where the property was unproductive, as in this case, but where the *cestui que trust* was absolutely perishing from want, or forced to the poor-house, or where the trustee could not possi-

bly raise the means to pay the taxes upon the property, and thus save it from a public sale and a total loss. Can it be said that the beneficiary of an estate which would bring in the market one hundred thousand dollars, should perish in the street from want, or be sent to the poor-house for support, or that the estate should be totally lost, because there is no power in the courts to relieve against the provisions of the instrument creating this trust? Exigences often arise not contemplated by the party creating the trust, and which, had they been anticipated, would undoubtedly have been provided for, where the aid of the court of chancery must be invoked to grant relief imperatively required; and in such cases the court must, as far as may be, occupy the place of the party creating the trust, and do with the fund what he would have dictated had he anticipated the emergency. In *Harvey* v. *Harvey*, 2 P.Wms., the court said, it " would do what in common presumption the father, if living, would, nay, ought to have done, which was, to provide necessaries for his children." It is true, that courts should be exceedingly cautious when interfering with, or changing in any way the settlements of trust estates, and especially in seeing that such estates are not squandered and lost. Trust estates are peculiarly under the charge of and within the jurisdiction of the court of chancery. The most familiar instances in which the court interferes and sets aside some of the express terms of the deed creating the trust, is in the removal of the trustee for misconduct and the appointment of another in his stead. But this is as much a violation of the terms of the settlement, as is a decree to sell the estate and re-invest it, or to apply the proceeds to the preservation of the estate, or the relief of the *cestui que trust* from pinching want. From very necessity a power must exist somewhere in the community to grant relief in such cases of absolute necessity, and under our system of jurisprudence, that power is vested in the court of chancery. This power is liable to be abused or imprudently exercised, no doubt, and so may every power vested in the courts or other branches of the government. The liability to the abuse or misuse of power can never prove its non-existence, else all powers of government would be at once annihilated.

We regret that in our researches we have been unable to find a careful discussion, by any court or commentator, of the powers of a court of chancery to afford relief in such a case as this. In many cases, the question of *jurisdiction* is considered as distinct from that of power. We often find the *jurisdiction* denied, where the *power* exists, but ought not to be exercised, and in this sense is the word *jurisdiction* usually used, when applied to courts of chancery. Where there is a want of power, the decree is void collaterally, but where there is said to be a want of jurisdiction merely, it is only meant that it would be erroneous to exercise the power, and the decree would be reversed on appeal. It means a want of equity, and not a want of power. In commenting on this distinction, the Court of Appeals of New York, in *Banks* v. *Duckenfield*, 18 N. Y. R. 592, said, " There are, I apprehend, few cases in which that position (that the decree is void for the want of power) could be affirmed, in respect to a court possessing general jurisdiction in law and equity, on grounds relating to the subject-matter of the controversy."

Upon the question of the powers of a court of chancery to break in upon and change the terms of a settlement, in England there are decisions which would indicate that the rule is different, where the subject-matter is personal property, from what it is where the subject-matter is real estate. There is another distinction which may be recognized in their decisions upon the powers of the court to deal with real estate; and that is, where the beneficiaries are infants, the rule seems to be different from what it is where they are adults, but laboring under disabilities. Where the subject-matter is personal property, whether infants or others are the beneficiaries, the courts do not hesitate to dispose of it as they think best for the beneficiary, regarding, it is true, but without being controlled by, the terms of the settlement. Thus, in *Saunders* v. *Vautier*, 4 Beavan, 115, stocks were bequeathed to trustees to be held by them, and the interest and dividends accumulated, till one who was then an infant should attain the age of twenty-five years, and then all was to be paid over to him. During his minority, the Lord Chancellor ordered that one hundred

pounds per annum of the dividends should be applied to his maintenance, and when he arrived at the age of twenty-one years, the whole was ordered to be paid over to him. The same power was exercised in *Rocke* v. *Rocke*, 9 Beavan, 66, *Barlow* v. *Grant*, 1 Vernon, 255, *Harvey* v. *Harvey*, 2 P. Wms. 21, and in many other cases, and we nowhere find this power questioned. In the matter of *Bostwick*, 4 J. C. R. 100, the same power was exercised by Chancellor Kent.

In one case only, do we find the court disposing of the inheritance of an infant, in a case not provided for by the act of Parliament. But the authority of this case is denied in *Taylor* v. *Philips*, 2 Ves. Sr. 23, and in *Russel* v. *Russel*, 1 Mallory, 525. In several other cases the power has been denied to the court, and the parties were referred to Parliament, where it was said that the power alone exists. These cases have been followed in New York, where, in *Rogers* v. *Dell*, 6 Hill, 415, a court of law held a decree void, which had ordered the sale of an infant's real estate in a case not authorized by the statute; and in the matter of *Turner*, 10 Barbour, 552, the question arose directly on a petition to sell, and the court held that they could not order the sale of an infant's estate, contrary to the provisions of the deed creating the estate.

Now, several remarks may be made upon these decisions. In the first place, both in England and in New York, as also in this State, there are statutes regulating the sale of infants' estates, and specifying in what cases the courts may order such estates to be sold, and it might be claimed, with much force, that where the legislature had specified certain cases in which the estates of infants may be ordered to be sold by the courts, and directed the mode of proceeding in such cases, there was an implied inhibition to order a sale in any other case, or in any other mode. Again, in England, Parliament has power to pass a law authorizing such sale, so that the tribunals of the country are not without authority to grant the necessary relief in every case, while in New York, and so far as we know, in all of the other States in this country, the legislature possesses no such power. This has been repeatedly decided in this State, and the reason assigned is, that it is a

judicial power which is prohibited to the legislature. If, then, the courts have not the power, in this country it nowhere exists, and there must be a failure of justice, possibly in the most extreme case of necessity. All who are familiar with the history and growth of the court of chancery in England, know that its jurisdiction has found its root in necessity. It has ever been its boast, that it was its peculiar province to afford relief in cases of necessity, where the other tribunals lacked the power to do justice, or afford the necessary relief in the particular case; and it is by no means certain that the court of chancery would not have exercised the power and granted the relief in these cases, had it not seen, that sufficient power existed in another tribunal where complete justice could be done.

Again, from a system of policy in England, a much higher degree of importance is attached to real estate, than to personal property. So to speak, it is looked upon as more sacred. It is further removed from the control of the courts. It is not subject to legal process, and may not be taken for the payment of debts, as in this country. In this respect, the policy of our institutions differs very widely from theirs. Here, we treat realty practically as of no higher order of property than personalty. In the policy of our law, there is no reason why the courts may not deal with real estate for the benefit of infants, wherever and to the same extent that it would with personal property. These are considerations which might well have induced the court of law to hesitate, before it held the decree of the court of chancery void, which had ordered the real estate of an infant to be sold for his benefit. Indeed, we have been unable to find a case in England going to that extent; and should such a case be so decided there, it is by no means certain that the court of chancery would not enjoin the party from availing himself of the decision of the court of law.

But whatever may be the true rule here as to the disposition of real estate belonging to infants, in cases not provided for by the act of the legislature, we nowhere find this power even questioned in any other case, except those referring to

16

the estates of infants. We find it exercised without question in reference to the estates of married women. The strongest case we have found of the exercise of this power—and it is the only one to which we shall refer—is that of *Rothwell* v. *Redrington*, 1 Vernon, 456. The syllabus of the case is this, and it is a correct statement of the decision: " A *feme covert*, after the death of her husband, bound by an enclosure, to which he had agreed, it appearing that her estate was improved by the enclosure, and that by disturbing it she aimed at an unreasonable advantage to herself." This is certainly a very strong case to show the extent of the power which the court may exercise over the estate of a married woman, and, as a question of power, goes much further than this case. There the act was done by the husband of the *feme covert* alone, without even consulting her, so far as appears; while here, the act was done by the court, at her solicitation and upon the ground, and, as was supposed at the time, for her benefit. It would be monstrous indeed, should she now be allowed to question a decree in a suit to which she was a party—nay, where she was the principal complainant, and where the decree was in conformity to her own prayer, and where she has already received all its benefits. Equity and good conscience require that she should be estopped now to complain of it. To do so is, to say the least, a moral fraud.

We repeat, that we much regret that we have nowhere found this subject carefully examined, as a distinct subject of chancery jurisdiction, and the limit of this power clearly settled. All the cases we have met with on the subject are very short, and none of them attempt to discuss the subject upon principle, and we are left to deduce a principle from the isolated questions decided; but from these, we have no hesitation or difficulty in arriving at the conclusion that this decree was rendered in the exercise of a legitimate jurisdiction, and not of an usurped power.

The bill showed, that the trust deed was executed in consideration of the relinquishment of dower by Mrs. Curtiss, which she held in other lands. That the estate thus held in trust for her, was of great value, but was unproductive; and

prayed that the property might be sold, and the proceeds invested in such way as to make it productive. This bill presented such a case as to require the court to investigate, to deliberate, and to decide, whether it was for the best interests of the *cestui que trust* to grant this her prayer. This, we think, cannot be denied, and indeed many judicious persons might think it better to order a sale and reinvestment on such a state of facts. The bill at least was sufficient to give the court jurisdiction, and when that is once established, the decree at least is not void for the want of power.

When we look into the proof, we do not find the affirmative evidence, to show that the property was in fact unproductive, or that it could be anywhere better invested; and if this record had been brought before us before the decree had been executed, and while a reversal of it would have afforded any practical remedy to the beneficiary, by preserving the estate from being wasted, according to her own request, we should no doubt have reversed it. And so, too, the court fell far short of its duty, in a prudential care for the judicious investment of the proceeds of the estate. These proceeds were placed absolutely in her hands, to be disposed of as she might be advised by her husband, whose influence over a dutiful wife, the court should have known, would be almost omnipotent, while it was against that very influence, and his improvidence, that the creation of the trust was designed to protect her. And this duty was none the less pressing upon the court because these safeguards were originally devised by the husband and wife, and the consideration moved from the latter, than in case these had been devised by another who had advanced the consideration for her benefit. It should have been the care of the court to watch vigilantly that the estate was preserved from her folly, as well as his improvidence. And, we repeat, were this decree unexecuted, we should not hesitate to reverse it at once. But it has been executed. The land has been sold under a valid and binding decree of the court, and purchased by innocent parties, who paid for it a full consideration, and who have held and improved it for many years. This purchase money was, by an improvident order of the court,

paid over to her, and it is lost and gone. No order of this court can recall it. The estate cannot be re-created. In no way can the estate be restored to her, from whom it was taken at her own request, urged, it may be, under improper influences, but by wresting it from those who purchased it under the sanctions of the law and a valid and binding decree of the court, and who paid full value for it. This would be as repugnant to our sense of justice as it would to the mandates of the law. The loss absolutely has been incurred, and must be borne by some one. Shall she be the victim of her own folly, and the improvidence, or, if you please, the misfortune of her husband, or shall the misfortune be thrown upon those who were in no way responsible for it? We cannot hesitate, the law cannot hesitate, as to what the answer should be. It is no doubt true that the reversal of this decree cannot affect their title acquired under it, nor can it re-create the money which is forever gone. It might throw an injurious suspicion upon their title, which would hurt them, but could not benefit her. It would be a barren victory, unfruitful of practical results. It is true that it might serve as an example to the courts, in whose hands is vested so solemn a trust, to watch over and guard the interests of those whose helplessness and incapacity requires a careful guardianship. But this, it is hoped, may be as well accomplished without a reversal as with. We lament the loss of this estate, and the instrumentality through which it has been lost. But it is now beyond our power to remedy it. The decree has been finally executed. Under it, rights have been legally and fairly acquired, which the law will not and ought not to permit to be disturbed. Notwithstanding the want of care and proper precautions with which it was originally rendered, we are now constrained to allow it to stand undisturbed.

The decree must be affirmed.

*Decree affirmed.*