PHILIP J. PRICE, impl'd, &c.,

*v.*

PITTSBURGH, FORT WAYNE AND CHICAGO RAILROAD CO.

1. USE AND OCCUPATION — *when action lies for.* A tenant holding by the year under the vendor of a lot of land, will be liable to an action by the purchaser from such vendor, for use and occupation.

2. DEEDS — *delivery of — escrow.* The delivery of a deed is a question of intention, to be decided by the jury.

3. SAME. Where deeds were executed May 1, 1860, and it was agreed if certain bonds and mortgages were delivered by the fall of that year, such deeds, which were placed in the hands of the attorney of the grantee, should take effect on the first day of May, 1860, it was held, by such agreement, the deeds took effect from that day, if the bonds and mortgages were delivered within the time specified.

4. SAME. The delivery of deeds to the attorney or solicitor of grantee, may be deemed an absolute delivery to the grantee.

5. SAME. When it is necessary to protect grantee against intervening rights, a deed delivered to a stranger as an *escrow*, to be delivered to the grantee on the performance of certain conditions, will take effect from its first delivery, on conditions being performed, if that can be established as the intention of the parties.

6. SAME. If it was the *bona fide* intention of the parties that the deed was to take effect after the conditions performed, from the date of the deed delivered as an *escrow*, such intention will control.

7. SAME. Where a paper is signed and sealed and delivered to a third person, to be delivered to another upon a condition which is afterwards complied with, the paper becomes a deed by the act of parting with the possession, and takes effect presently, without reference to the precise words used, unless it clearly appears to be the intention that it should not then become a deed.

APPEAL from the Superior Court of Chicago.

This was an action of assumpsit for the use and occupation of certain lots of ground in the city of Chicago, and brought in the Superior Court of Chicago by the Pittsburgh, Fort Wayne and Chicago Railroad Company, against Philip J. Price and David Morris. Price alone was served with process. He pleaded non-assumpsit and *nul tiel* corporation, and there was a verdict against him for eighteen hundred dollars. A motion for a new trial was made and overruled, and judgment entered on the verdict. From this judgment Price has taken this appeal and assigned the following errors:

1. That the court erred in giving the instructions aforesaid on behalf of the plaintiffs.

2. The court erred in refusing the first, second, and third instructions asked on behalf of the defendant, and in modifying the fourth and fifth instructions asked on behalf of defendant.

3. The court erred in overruling the motion for a new

trial, and rendering judgment in favor of plaintiffs against the defendant.

4. The court erred in admitting certain evidence on the part of the plaintiffs, and in refusing to allow certain evidence as to the interruption and damage to defendant's business in consequence of the railroad track across the lots in controversy, and the blocking up of the passage from one end of the said lots to the other by the cars of the plaintiffs standing on the track, and the making up of trains on said lots, &c.

5. The verdict was excessive, and against law and the evidence given on the trial.

6. The verdict is informal, improper, uncertain, and insufficient.

As the principal controversy arose upon the instructions, it does not seem necessary to report the evidence in the cause, to any greater extent than is stated in the opinion of the court. The instructions asked by the plaintiffs, which were given by the court and exceptions taken by the defendants, are as follows:

1. As to the lot purchased by the plaintiff of Lemuel Crawford, if the jury believe, from the evidence, that the defendant had, before the purchase of said Crawford by the plaintiff, occupied the same under a parol lease at a rate agreed upon between Crawford and defendant, and with the express understanding, that, if the lot should be sold to the plaintiff at any time during the lease, no deduction should be made for the occupation by said company of the right of way across said lot for the remainder of the term, and that the defendant held over after the expiration of said term without any new agreement, then the law implies, and the jury will so find, that the same rate of rent shall be paid for said lot by the defendants after as before said purchase; and the jury will not take into consideration the alleged condition and want of repair of the dock of said lot, without proof of an express covenant to put, or keep the same in repair by the plaintiff or its grantor.

2. As to the lot purchased by the plaintiff, of Singer & Talcott; if the jury believe, from the evidence, that the defend-

ant occupied the said lot after the purchase of the same by the plaintiff, then the plaintiff is entitled to recover for such use and occupation, in this action, what the evidence shows the same to have been worth, if that was the agreement with Talcott, and they were holding under such agreement; and if the evidence shows, that during the time the said premises were so occupied by the defendant, the plaintiff had occasion to use, and did use, a part of said lot, for tracks for its road, then the jury will allow to said plaintiff the full value of the whole lot up to the time of such occupation of part, and for the remainder of the time during which the lot was occupied by the defendants, they will allow whatever the same was worth after such occupation of part. This is so, if it was the understanding that, in case the railroad should conclude the trade and give the bonds, that then they might take the possession of such parts of the lots as they might need, allowing to the tenants the right to occupy the balance of the lot, paying therefor a reasonable rent.

The defendant, Price, then asked the court to give the following instructions to the jury on his behalf, which the court refused to do, to which refusal the defendant then and there excepted:

1. That if the deeds, conveying the lots in question, were delivered to Winston upon condition not to take effect until the bonds for the purchase-money were delivered, then the plaintiffs cannot recover any compensation for the use and occupation of either of the lots, before the bonds given for such lots respectively, were delivered; in other words; that the plaintiffs can only recover for the time that they had the title, and that their title only dated from the time at which the conditions, upon which the deeds were delivered, were performed.

2. If the jury believe, from the evidence, that no price nor time of payment was agreed on, between the owners of the lots and the defendant, for the rent for the year in question, but that the understanding was that it was to be a reasonable rent; and if they further believe, from the evidence, that the deeds for the respective lots in question were deposited with

Mr. Winston, on condition that they were not to become operative to convey the title, nor to be delivered to the company, or put on record, nor any use made thereof, unless and until the bonds to be given by the company were made and delivered to the respective owners of the lots, but were held as an escrow by Mr. Winston until that event, then the plaintiffs cannot recover for any rent which had accrued previous to that time, although the deeds were, when the bonds were delivered, to take effect as of the 1st May, 1860.

3. If the jury believe, from the evidence, that the defendants were, in the fall of 1859, at the time of the conversation spoken of by Cobb, tenants from year to year, and were then holding over with the assent of Crawford for the year from May 1, 1859, to May 1, 1860 (*and entitled to the possession of said lot for that time*), at the rate of $1,200 a year, and Cobb and Price did make an agreement for that year at $1,200, and Price agreed the railroad might go through without charge or deductions, such agreement would not bind Price to let the road go through without charge or deduction, and would not control the right of the defendants in that respect for the year from May 1, 1860, to May 1, 1861. *Refused.*

The following instructions, asked for by the defendant, were refused by the court, but were modified by the court without defendant's assent, and given as modified; to which defendant excepted. The modifications are in parenthesis, and printed in italics:

4. That if the landlord, before the expiration of the lease or tenancy, against the consent of the tenant, evict or expel the tenant from all or any substantial part of the premises leased, the tenant is discharged from the payment of any rent from the time of such eviction, and is not bound to payment for what he continues to occupy after such eviction; that if there is no agreement to the contrary, the tenant is entitled to the possession of the premises without interruption or molestation by the landlord; and that if the jury believe, from the evidence, that the defendant was tenant from year to year, and was entitled to the possession of said premises in question from May 1st, 1860,

to May 1st, 1861, and that against defendant's consent, and in the absence of any (*understanding or*) agreement permiting it, the railroad company (*wrongfully*) took possession of part of said lots for their railroad track, and continued to hold and use the same until May 1, 1861 (*and evicted defendant therefrom*), then such an eviction by the railroad company, works an extinguishment of all rent for said premises from the time of its occurrence, notwithstanding the defendant continued to occupy the residue of said lots until May 1, 1861. (*But if it was the understanding that the railroad might put their track across the lots in the event of their electing to do so on completing their purchase, and defendant held under that understanding, then putting down the track after such purchase would not amount to an eviction.*)

5.   That physical and forcible expulsion is not necessary to produce an eviction; but any act on the part of the landlord which deprives the tenant of the beneficial enjoyment of the premises, amounts to an eviction. (*This is so, if the act was done in violation of the rights of the tenant.*)

The court then, at the request of the defendant, gave the following instructions to the jury:

1.   If the jury believe, from the evidence, that the defendant occupied the lots in question from May 1, 1860, to May 1, 1861, under an understanding or agreement with the owners of the lots that they should pay only a fair and reasonable rent for the lots, the jury, in determining what was a fair and reasonable rent, should take into consideration the condition of the docks, and the occupancy by the railroad for their track and switches.

6.   If the jury believe, from the evidence, that Mr. Foss (on May 1st, 1860), told the defendants that they might occupy the property in question, for a fair or reasonable rent, for the year from May 1st, 1860, to May 1, 1861, and that he was authorized by the plaintiffs to do so, and the defendants assented thereto, then the defendants are not liable to pay the sum of $1,200 a year for the Crawford lot, if its rent was not reasonably worth that for said year, although they may believe, from

the evidence, that Price did, in the fall of 1859, agree with Cobb to pay $1,200 a year.

7. That if the jury believe, from the evidence, that the defendants occupied the lots in controversy from May 1st, 1859, to May 1, 1860, under a lease for that year from the then owners of the lots, and that the defendants continued to hold over and occupy the premises after May 1st, 1860, with the assent of such owners, without any agreement before that time as to how they should occupy the lots, the defendants would be entitled to hold the premises for another year from May 1, 1860 ; and in the absence of any understanding or agreement permitting it, the plaintiffs could not lawfully expel or dispossess them until May 1, 1861.

8. If the jury believe, from the evidence, that no price or time of payment for rent was agreed upon, but it was understood or agreed that the rent was to be for the year in question, only a reasonable rent, and that the defendants occupied the premises in question on 1st May, 1860, and thereafter till May 1st, 1861, for a coal yard and for the coal business, and rented the lots for that purpose, and the owners of the lots knew, when they rented the premises, that they were to be used in that business, then the jury, in determining what rent should be, should consider what the rent of the premises was worth in that particular business, and may take into account such inconvenience or interruption, if any, to that kind of business as occurred in consequence of the condition of the docks and the use of the portion of the lots by the railroad company for a track.

Mr. GEORGE F. BAILEY, for the appellant, argued as follows:

This was an action of assumpsit, for the use and occupation of certain lots in Chicago, from May 1, 1860, to May 1, 1861. The defendant was in the coal business, and had for several years occupied the lots as a coal yard, under leases from the owners of the respective lots for quarterly payments of rent, varying from time to time, until the year 1859, during which year the rent was at the rate of $1,200 per lot. The defendant

held over, and continued to occupy the lots for the years 1860 and 1861.

On the trial of the case, the plaintiffs introduced the agent of Mr. Crawford (the then owner of lot 3), who said that in the fall of 1859, defendant agreed to pay Crawford $1,200 for the year ending May 1, 1860; that he reserved the right to let the railroad company lay a track across the lot, if they wished; and also introduced Mr. Talcott, who, with Mr. Singer, was the part owner of lot 2, who said that, about the first of May, 1860, he had a conversation with defendant, in which he told him that he wished him to occupy the lot as though no trade was in contemplation with the railroad company, and pay them (Talcott and Singer) a reasonable rent for the premises; that one trade had fallen through with the company and this might.

During the spring of 1860, the owners of the lots, agreed with the railroad company at Chicago, to sell them the lots, and take in payment certain bonds which were to be executed by the railroad company at Pittsburgh, Pa.; that the deeds should be executed and left with Mr. Winston as *escrows*, until the completion and delivery of the bonds, when they were to be recorded. By this agreement Winston, who was the solicitor of the railroad company, was to hold the deeds and not record them, nor make any use of them, until the bonds and mortgages to be given therefor were executed, and given to the owners, respectively; the deeds were *then* to take effect as of the 1st May, 1860. If the bonds were not given to the owners, the deeds were to be returned to them, and not to take effect at all. The title was not to pass until the bonds were delivered, and the contract was not consummated until then.

The deeds — one from Crawford, dated and acknowledged April 20, 1860, and recorded 5th November, 1860; the other from Talcott and Singer, dated May 1, 1860, acknowledged *May* 14, 1860, and recorded October 18, 1860 — were, shortly after their execution, left with Winston under this agreement, and so remained until recorded.

The plaintiffs, on this state of facts, seek to recover in their own name, rent for the year ending May 1, 1860 — as well before as after the delivery of the bonds; and insist, under the agreement, that their title relates back to the 1st of May, 1860, and that they can recover rent from that time in their own name.

The action for use and occupation, as is well known, is founded on contract, and will only lie where there is a contract express or implied, and the relation of landlord and tenant subsists between the parties. *Dudding* v. *Hill*, 15 Ill. 62; *McNair* v. *Schwartz*, 16 id. 24; Taylor on Land. and Tenant; *Smith* v. *Stewart*, 6 Johns. 46; *Bancroft* v. *Wardell*, 13 id. 489; *Cobb* v. *Arnold*, 8 Metc. 398.

In order to ascertain when the relation of landlord and tenant commenced between the parties to this suit, it becomes necessary to consider when the plaintiffs acquired title. *Cobb* v. *Carpenter*, 2 Camp. 13, n.; *Harris* v. *Booker*, 12 Moore, 283; *Morgell* v. *Paul*, 17 Eng. Com. Law, 711; 2 M. & R. 303; *Stephens* v. *Lynn*, 8 Carr. & Payne, 380; 34 Eng. Com. Law, 796; *Hospital Life Insurance Co.* v. *Wilson*, 10 Metc. 126; *Russell* v. *Allen*, 2 Allen (Mass.), 42; *Burden* v. *Thayer*, 3 Metc. 69; *Theological Institute of Connecticut* v. *Barbour*, 4 Gray, 329.

We insist that this did not occur until the delivery of the bonds; that until then the deeds were *escrows* merely; the title remaining with the grantors, subject to be transferred on the delivery of the bonds only.

The rule as to the effect of such deeds, and the time their operation commences, is well settled. They take effect only on performance of the condition attached to them, and from the time of their second delivery, which in this case, would be the delivery for record. This rule is without any exceptions but those which arise from the necessities of the case, to *escape the effect of events happening between the first and second delivery*, and where, unless the deed is allowed to take effect from the first delivery, it would fail altogether. As, for example, where the grantor dies, or becomes insane, between the

first and second delivery; or a *feme sole* grantor marries during that time. *These are the only exceptions* to be found in the books. In this class of cases the law resorts to a fiction to prevent the total failure of the deed; while, in all others, the operation of the deed commences from the second delivery, and in accordance with the fact. 4 Kent, 454; *Frost* v. *Beekman,* 1 John. Ch. 228; *Turner* v. *Williams,* 11 Ill. 229; *Johnson* v. *Catling,* 2 Johns. 248; 5 Sneed (Tenn.), 639; *Jackson* v. *Rowland,* 6 Wend. 665; *Green* v. *Putnam,* 1 Barb. 500; *Ladd* v. *Ladd,* 14 Verm. 185.

Here no such necessity exists, and the fiction of the law will not be introduced; but the deed must be held to have become operative only from the delivery of the bonds and mortgage. If there is any right of recovery for the period preceding that delivery, it can be enforced in the name of the then owners of the lots. And this works no injustice. It is but a compliance with a well established rule, and must be adhered to in this as well as other cases.

If these principles be conceded, it is left to consider only the effect of the agreement at the time of the first delivery; that when the condition was performed and the deed did take effect, it should relate back and take effect as of the first delivery. I can not discover that this circumstance alters the case. It certainly is not competent, by parol agreement, to carry back for any period the title to real estate. If the title did not pass to the railroad company until the delivery of the bonds, it was until then in the grantors, and they alone could maintain an action for an injury to the freehold, or for the recovery of benefits arising therefrom. They held the title during the period the railroad company were considering the purchase, and taking a vote to issue the bonds and mortgage, &c.; and for the purposes of this case, the question is the same as it would have been had the trade been begun and finished on the day the bonds and mortgage were delivered.

The ruling of the court below, recognizes necessarily the principle that the title to land can, by parol, be carried back so as to have the title vest at a previous time; for it will be

borne in mind that the plaintiffs were allowed to recover from May 1, 1860, to May 1, 1861; while the Talcott deed was not *executed*, nor delivered to Winston, until 14th May, 1860.

Until the delivery of these bonds and mortgage then, the grantors were the owners of the lots, and occupied the relation of landlord towards the defendant. The defendant was holding under the owners of the lots, not under the company, and the contract, whatever it was, was with the grantors, and they alone could sue.

There can be no pretense in this case of an express agreement to pay rent to the railroad company, nor any act of attornment, and on the facts of this case none can be implied.

Witness Cobb claims to have reserved the right to let the railroad company lay their track across the lot; but does not pretend that there was any agreement or understanding that the rent should be paid to the company, or that defendants should become their tenants. This was in the fall of 1859, before the railroad company had concluded even to buy the lot, and of course there could be no attornment at that time.

Witness Talcott says, after the arrangement had been made to sell to the railroad company, and about May 1, 1860, he told defendant that he wished *him to occupy the lot the same as though no trade was in contemplation with the company, and pay them* (*Talcott and Singer*) a reasonable rent; that one trade with the railroad company had fallen through, and this one might. Here we see that Talcott expressly excludes the idea of payment to the railroad company, and reserves the right to himself to collect the rent, and continue as landlord.

The conversation with Barned, which Foss speaks of, amounted to nothing. Neither of them had any authority to act on the subject of the occupation of the premises. No agreement was completed nor in contemplation between them. The railroad company had not then the title, and of course could not make an agreement; and Barned did not even call on them. No attornment could take place until the title passed. It is clear then there never was an attornment or

agreement to pay rent to the railroad company, nor anything approaching such an act.

The delivery of the deeds to Winston, the solicitor of the company, is, in effect, the same as a delivery to any third person not connected with the company. *So. Life Insurance and Trust Co., and State of Florida* v. *Cole,* 4 Fla. 359 ; *Brown* v. *Reynolds,* 5 Sneed, 639.

The testimony of Johnson, as to the extent of the interruption on account of the occupation by the railroad company, and the passing and standing of the cars on the lots, and the damage by this delay to the business of the defendants, should have been admitted.

Defendant had occupied the lots for several years as a coal yard, and in the business of buying and selling coal. Plaintiff's witnesses stated that the defendant, in contemplation of the occupation by the company for its track, agreed to pay a reasonable rent for the premises. Now, I submit that what would be a reasonable rent for these premises in the business for which they were rented, with such an obstruction, could only be ascertained by showing the extent of the interruption, the time the track was occupied, the time and expense of removing the cars, the number of men and teams delayed by it, and all the circumstances connected with this delay, and the damage to the business.

In some kinds of business, as for instance, those in which there was no occasion for crossing the track, the damage would be inconsiderable, perhaps; while in others it would amount to almost a total suspension of the business. As the defendants were in occupation for a particular business, and the premises rented for that business, the true inquiry would seem to be, what were the premises worth in that business.

Again, on the question of eviction, this evidence is certainly proper. How far the defendant was deprived of the substantial or beneficial enjoyment of the premises, must have depended on the extent and nature of the interruption in the particular business for which the lots were rented. These were facts

without which the jury would be unable to determine the question of eviction. *Halligan* v. *Wade*, 21 Ill.

These considerations are urged with more confidence in view of the amount of the verdict, from which it seems manifest that the jury altogether ignored the extent of the interruption by the railroad in its use of the track.

The court erred in the instructions given on the part of the plaintiffs.

Under any aspect of the pretended agreement with Cobb, in the fall of 1859, that the railroad company might go through the lot at any time during the year expiring May 1, 1860; if defendant held over the next year on the same terms, the railroad company would be restricted in their occupation for a track, to such a part of the following year as remained of the year 1859, at the time of such conversation; while by the first instruction, the jury were told that the railroad company could, without deduction of rent, take possession *at any time* after their purchase.

The court also erred in refusing the first and second instruc tions asked for by the defendant, for the reasons already stated.

And also, in refusing the third instruction asked for by the defendant for the following reason:

If, as that instruction assumes, the jury should find as a fact, that defendant, from the year ending May 1, 1860, was a tenant from year to year at $1,200 a year, and entitled to the unrestricted possession of the entire lot three for that year, we submit that an agreement made after the year had half expired, without new consideration (and none was pretended), that the railroad company might occupy a part of the lot without charge, would be invalid, and would not control the rights of the defendant in that respect for that year nor for the year in question.

Messrs. WINSTON and BLODGETT, for appellees in reply, after reviewing the evidence, said: They did not understand that this court sat for the purpose of weighing testimony in estimating values and damages.

The Supreme Court will not reverse a judgment as being against evidence, unless the finding of the jury is clearly so. *Booth* v. *Rives*, 17 Ill. 175.

Where the evidence justifies a verdict, a case will not be disturbed upon the facts. *Ill. Cen. R. R. Co.* v. *Hays*, 19 Ill. 166; *French* v. *Lowry*, 19 id. 158; *Archdale* v. *Moore et al.* 19 id. 565.

A verdict will not be set aside where the evidence is conflicting, even though it may be against the weight of evidence. *Morgan* v. *Ryerson*, 20 Ill. 343; *Goodel* v. *Woodruff*, 20 id. 191; *Dunshee* v. *Hill*, 20 id. 499.

In an action of assumpsit to recover back money paid for land not conveyed, the finding of the jury as to the value of the lots will not be disturbed. *Dunlap* v. *Taylor*, 23 Ill. 460.

The Supreme Court will not disturb a verdict which is supported by evidence. *Ohio & M. R. R. Co.* v. *Brown*, 25 Ill. 124.

This court will not interfere where substantial justice has been done, and there is evidence to sustain the judgment of the court below. *Crabtree* v. *Crawford*, 25 Ill. 248; *Bromley* v. *People*, 27 id. 20.

The only exception taken at the trial to the ruling of the court upon the admissibility of the testimony was as to the statements of the witness Johnson, who "was proceeding to state the extent of interruption on account of the passing and standing of the cars on the lots and the damage by this delay to the business of the defendants Price, Morris & Co.," when he was stopped, and his further testimony on this point excluded by the court.

This witness had already stated *all of the facts* upon this point, as follows: "After the track was laid down it was a great interruption. The scales were on the west side and the coal on the east side, and all the coal had to be drawn across the track. They were almost continually switching there, and making up trains on the lots, and we had to move them when we could not wait until they were moved by the engine."

All this was admitted without objection, and it was only when the witness was proceeding to give *his opinion* of the effect of this interruption that the objection was made and properly sustained.

The only remaining point to be discussed in the case is as to the instructions which were given in behalf of the plaintiff, and refused on the part of the defendant, to which giving and refusal appellant excepts. Certain general principles with reference to the giving and refusing instructions have been settled by this court, to which it may be well to refer.

This court will not disturb a verdict by which substantial justice has been done, on account of instructions having been incorrectly given or refused, nor because the jury have disregarded them. *Elam* v. *Badger*, 23 Ill. 498.

Where an instruction given is substantially the same as one refused, the judgment will not be disturbed for such refusal. *Montag* v. *Linn*, 23 Ill. 551.

When instructions have been given, which, though erroneous, could not have misled the jury to the injury of the plaintiff in error, this court will not on that account disturb the judgment of the court below. *Howard Ins. Co.* v. *Cormick*, 24 Ill. 355.

Where substantial justice has been done, a judgment will not be reversed merely because proper instructions were refused. *Schwarz* v. *Schwarz*, 26 Ill. 81.

It does not follow that a judgment will be reversed because an improper instruction has been given for the plaintiff and appellee, if the other instructions on his behalf put the whole case before the jury fairly. *Warren* v. *Dickson*, 27 Ill. 115.

The instructions offered by appellant and refused by the court below probably present the only point which the counsel for the appellant will seriously insist upon as having been erroneously determined upon the trial, the doctrine contended for by him being that notwithstanding the purchase of the lots by the plaintiff was made before the first day of May, 1860, and the further facts that the trade, by agreement of the parties, was to take effect on that day, and the deeds were

dated and executed on that day or prior thereto, and were delivered to Winston, the solicitor of the plaintiff, who had charge of all its legal business in Chicago, on or about that day, with instructions to withhold the same from record till the bonds and mortgages securing the purchase-money should be prepared and executed by the plaintiff and sent from Pittsburg, with the understanding, however, that when these should arrive, the deeds should take effect as of the 1st of May, and that this understanding was carried out by the parties, and the mortgage and bonds were returned duly executed, bearing date and drawing interest from May 1st, 1860, and were delivered to the parties, and the deeds placed upon record. Yet the law is such that for the rent accruing during the interim before the deeds were placed upon record, the plaintiff cannot sue in its own name, but must use the names of its grantors; that the deeds were delivered to Winston in escrow, and that no agreement of the parties can make the deed take effect as of any other time than the final delivery which was, as plaintiff alleges, when the bonds were delivered to plaintiff's grantors.

And they contended on behalf of plaintiff, first:

That the deeds from Singer & Talcott and Crawford took effect in accordance with the agreement of purchase and the dates of the deeds, as of the first day of May, 1860.

The delivery of course is essential to the taking effect of the deeds, but the time when the delivery shall be considered as made, is a subject entirely within the control of the parties.

This subject is well considered in Sheppard's Touchstone, pp. 57, 58 and 59, as follows: " The fifth thing required in every well made deed is, that there be a delivery of it. And for this it must be known that delivery is either actual, *i. e.*, by doing something and saying nothing, or else verbal, *i. e.*, by saying something or doing nothing, or it may be by both; and either of these may make a good delivery and a perfect deed. * * * And a deed may be delivered by the party himself that doth make it, or by any other by his appointment or authority, precedent, or assent or agreement subsequent, for

*omnis ratihabitio mandato equiparator.* And so also a deed may be delivered to the party himself to whom it is made, or to any other by sufficient authority from him; or it may be delivered to any stranger for and in the behalf and to the use of him to whom it is made, without authority. * * *

" The delivery of a deed *as an escrow* is said to be when one doth make and seal a deed and deliver it *unto a stranger,* until certain conditions be performed, and then to be delivered to him to whom the deed is made, to take effect as his deed. But in this case two conditions must be heeded: 1. That the form of words used in the delivery of a deed in this manner be apt and proper. 2. That the deed be delivered to one that is a stranger to it, and not to the party himself to whom it is made." * * * * * * *

" But when the conditions are performed and the deed is delivered over, then the deed shall take as much effect as if it were delivered immediately to the party to whom it is made, and no act of God or man can hinder or prevent this effect then, if the party that doth make it be not at the time of making thereof disabled to make it. He, therefore, that is intrusted with the keeping and delivery of such a writing, ought not to deliver it before the conditions be performed; and when the conditions be performed he ought not to keep it, but deliver it to the party. For it may be made a question whether the deed be perfect before he hath delivered it over to the party according to the authority given him. *Howbeit it seems that the delivery is good,* for it is said in this case that if either party to the deed die before the conditions be performed, and the conditions be after performed, that the deed is good; for there was *traditio inchoata* in the lifetime of the parties; and *postea consummata existens* by the performance of the conditions *it taketh its effect by the first delivery,* without any new or second delivery; *and the second delivery is but the execution and consummation of the first delivery."*

KENT, in the 4th volume of his Commentaries, page 529, thus treats of the subject of escrow: " Generally an escrow takes effect from the second delivery, and it is to be considered as

the deed of the party from that time; *but this does not apply where justice requires a resort to fiction.*"

It will be observed that in the text books quoted, the question as to whether the deed takes effect at the time of the second delivery (so called) or relates back to the time of its delivery in escrow is discussed as an operation of law, and that the effect of the agreement of the parties upon the time of delivery is not examined or referred to. The chief instances mentioned in the books in which *the law will make* the delivery relate back to the time of the deposit in escrow, are cases of the death or insanity of the grantor after the first delivery, or of the marriage of the grantor, who was a *feme sole* at that time, but the general principle is that such relation will be had whenever the purpose of justice requires, and several cases may be found in the books of such relation back, besides the instances above named. *Lessee of James Shirley* v. *Ayers*, 14 Ohio, 307.

In this case C purchased land from B, and took a bond for a deed in 1833. In 1835 a deed was executed by B, conveying the land to C, and placed in the hands of V, to be held in escrow until payment of the amount due on the bond when it was to be delivered to C. This payment was made by C in 1837, but the deed was not delivered to him. In 1838 C assigned his interest in the bond to S, and in 1841 B conveyed the land to S by virtue of the assignment, which *deed was recorded October 23d*, 1841, *at* 9 *o'clock A. M., and* 1½ *o'clock P. M. of same day the deed from B to C, left in escrow, was also placed on record.*

On 13th April, 1840, the lot was levied on under a judgment against C, and on 16th February, 1841, the same was sold, and a deed was made therefor by the sheriff to the defendant, and the question was, whether S, the plaintiff or the defendant owned the land. The court say: "As a general rule, when an instrument is placed in the hands of a third person as an escrow, it takes effect from the second delivery; but such rule does not apply *when either justice or necessity requires a resort to fiction in order to avoid injury; as in the case of intervening rights between the first and second delivery,*

it shall have relation back, and take effect from its first delivery as an escrow." Judgment for defendant.

The following case seems directly in point:

When a deed was deposited by the grantor with A as *an escrow*, to be delivered to the grantee on his producing a mortgage executed and recorded, and a certificate of the clerk of there being no other incumbrance on record ; and A, on receiving the mortgage and the certificate of registry by the clerk, &c., delivered the deed to the grantee and the mortgage to the grantor. Held, that the condition was performed, and the deed well delivered to the grantee, *and that it related back so as to give effect to an intermediate conveyance by the grantee to C*, although the clerk made a mistake in the registry of the mortgage as to the amount of the debt. *Beekman* v. *Frost et al.* 18 Johns. 544 ; see also *Foster* v. *Mansfield*, 3 Metc. 412; *Raymond* v. *Smith*, 5 Conn. 559 ; *McKinzie* v. *Roper*, 2 Strob. 306.

The following case also is in point:

Where a paper is signed, sealed and handed to a third person to be delivered to another, upon a condition which is afterwards complied with, *the paper becomes a deed by the act of parting with the possession, and takes effect presently*, without reference to the precise words used, *unless it clearly appears to be the intention that it should not then become a deed, and this intention would be defeated by treating it as a deed from that time*. *Hall* v. *Harris*, 5 Ired. Eq. R. 303.

II. In order to make a *delivery in escrow* the deed must be delivered *to a stranger ;* if delivered to the party himself, or in case the grantee be a corporation, to an officer or agent of the grantee, the delivery will take immediate effect. *Foley* v. v. *Cowgill*, 5 Blackf. 20 ; *Graves* v. *Tucker*, 10 Sme. & Mar. 9.

Though a deed or agreement be delivered *as an escrow* to the party, *or his agent*, the delivery is absolute, and the instrument takes effect on its delivery. *Worral* v. *Munn*, 1 Seld. (N. Y.) 229.

A corporation can only act through its officers and agents, and the deeds in this case having been delivered to the solicitor of the plaintiff, were thereby delivered to the corporation itself in the first instance; and according to the authority of the text

books before cited, the delivery became absolute in the first instance.

In the case of *Life Insurance and Trust Co.* v. *Cole*, 4 Fla. 359, a different construction was given to the delivery, *in order to prevent wrong and injustice.*

III. The only remaining question in the record upon which a point can be made, is as to the modifications of the instructions asked by the defendant, and numbered 4 and 5, and the refusal of the instruction upon the same point, No. 3.

A total and wrongful eviction by a landlord of his tenant, takes away all claim for rent after such eviction; not so in case of a partial eviction, when the tenant continues to occupy the remainder, and the use and occupation of the part occupied is valuable. Taylor's Landlord and Tenant, § 388 and cases cited; Story on Contracts, § 657.

In the case of *Halligan* v. *Wade*, 21 Ill. 470, there was substantially a total eviction, and the whole premises rendered useless to the tenant.

*No application of the above rule of law is called for in this case, as the entry and occupation of a portion of the demised premises by the plaintiff was in accordance with the understanding and agreement between the defendant and Cobb, the agent of Crawford, the owner of one of the lots, and Foss, who acted for the plaintiff as to both of the lots.*

At all events, there was evidence of such understanding and agreement, and the court, in modifying the defendant's instruction on that point, merely left the question to the jury.

The instruction No. 3, which was refused, was entirely inapplicable to the evidence of the case, the evidence being that the agreement made between Cobb and Price, related as well to the year 1860 as 1859.

Mr. Justice Breese delivered the opinion of the Court:

This was an action of assumpsit brought to the Superior Court of the city of Chicago by the appellees against the appellants, on the common counts for the use and occupation of

certain lots in that city. The defendants pleaded the general issue and *nul tiel* corporation. There was a trial by jury, and verdict finding the issues for the plaintiff, and assessing damages against Philip J. Price, impleaded with David Price, who was not served with process. A motion for a new trial was made and overruled, and exceptions taken. Judgment was entered on the verdict, and the record brought here by appeal.

There was much testimony heard as to the value of the use of these lots for a coal yard, and averaging the testimony of the witnesses on both sides, the jury would have been warranted in finding more than they did find. They certainly found less than they might have found from the testimony.

The principal point, however, which is made in the case is, as to the right of the plaintiffs below to recover at all for use and occupation. Of this we think there can be no doubt. By express agreement, when the plaintiffs purchased the lots of the former owner, under whom the defendant held as tenant by the year, it was agreed and understood, if the plaintiffs consummated the trade by delivering the bonds and mortgages by the fall of 1860, the deeds they had executed on and prior to the first day of May, 1860, and placed in the hands of the attorney and solicitor of the plaintiffs, were to take effect and be in force on the first day of May, 1860. The defendant insists that the delivery of these deeds to the solicitor of the company, was, in effect, the same as a delivery to any third person not connected with the company; that they were delivered to a stranger, and were, therefore, escrows; and being so, the title to the lots remained with the grantors, subject to be transferred on the delivery of the bonds and mortgages. It is generally true, and is the old doctrine of the books, that if a deed is delivered to a stranger to be delivered to the grantee, on the performance by him of certain conditions, and they are fully performed, and the deed delivered, that the deed takes effect from the second delivery, and to be considered the deed of the party from that time.

This rule, it is said, does not apply, where justice requires a resort to fiction. 4 Kent's Com. 454.

3 — 34TH ILL.

The instances usually put are when the grantor, after the deposit of the deed as an escrow, dies, or becomes insane, or, if a *feme sole*, marries before the grantee has performed the conditions, in such cases the law will make the second delivery relate back to the time of the deposit of the escrow. 1 Shep. Touch. 123. What effect the agreement of the parties should have upon the time of the delivery is not there discussed, nor is it said these are the only instances in which there shall be this relation back.

The case of *Lessee of Shirley* v. *Ayres*, 14 Ohio, 307, was an ejectment, where it was held a deed delivered as an escrow should take effect on its first delivery, on the performance of the condition, if it was necessary to protect the grantee, or those claiming under him, against intervening rights.

The case of *Beekman* v. *Frost*, 18 Johns. 543, in the Court of Errors, holds the same doctrine. A very strong case is to be found in 9 Mass. 307, *Hatch et al.* v *Hatch et al.*, where the court held that a writing delivered to a stranger for the use and benefit of the grantee, to have effect after a certain event, or the performance of some condition, may be delivered either as a deed or as an escrow. The distinction, however, the court say, being almost entirely nominal when we consider the rules of decision which have been resorted to, for the purpose of effectuating the intentions of the grantor or obligor in some cases of necessity. If delivered as an escrow, and not in name as a deed, it will, nevertheless, be regarded and construed as a deed from the first delivery, as soon as the event happens, or the consideration is performed upon which the effect had been suspended, if this construction should be then necessary in furtherance of the lawful intentions of the parties.

The case of *Hall* v. *Harris*, 5 Ired. Eq. R. 303, is to the same effect.

The question in this case was, whether a deed took effect on the second day of March, the date of its execution, or on the tenth, the day on which full payment for the land was made. The trade was made on the second of March, on which day part of the price was paid, and the vendor was to make a deed

and hand it to one Morgan, to be by him handed to the vendee when he paid the price. On that day the vendor made the deed and handed it to Morgan. Afterwards, on the tenth of March, the vendee paid Morgan the balance due and received the deed. The purpose, the court say, for which the deed was delivered to a third party instead of being delivered directly to the plaintiff, was merely to secure the payment of the price. When that was paid the plaintiff had a right to the deed. The purpose for which it was put into the hands of a third person being accomplished, the plaintiff then held the deed in the same manner he would have held it, if it had been delivered to him in the first instance. This was the intention, and we can see no good reason why the parties should not be allowed to effect their end in this way. Though the plaintiff might have avoided the purchase, his rights cannot be affected by that fact.

The court remarks, if the vendor had died after the delivery to the third person, and before the payment, the vendee, upon making the payment, would have been entitled to the deed, and it must have taken effect from the first delivery, or it could not have taken effect at all. The intention was, it should be the deed of the vendor from the time it was delivered to the third person, provided the condition was complied with. If this intention is *bona fide*, and not a contrivance to interfere with the right of creditors, the deed must be allowed to take effect. The court conclude by saying, we are satisfied from principle and from a consideration of the authorities, that when a paper is signed and sealed and handed to a third person to be handed to another, upon a condition which is afterwards complied with, the paper becomes a deed by the act of parting with the possession, and takes effect presently, without reference to the precise words used, unless it clearly appears to be the intention that it should not then become a deed.

In the case before us the proof was, that the deeds were delivered, as deeds, to the solicitor of the company, with the understanding, when the bonds and mortgages of the railroad

company to be given in payment of the lots, and which had to be executed in a distant State, were returned from there, the deeds were to take effect as of May 1, 1860; and if the bonds were not returned, the deeds were not to take effect at all; that the bonds were not returned until the fall of 1860, and that he, the witness, should not have delivered or recorded the deeds until the bonds came; that the bonds and mortgages are dated and bear interest from May 1, 1860, and interest had been paid on them from that date.

It is a case quite like the case of *Hatch* v. *Hatch*, decided by the Supreme Court of Massachusetts, and the case in Iredell decided by the Supreme Court of North Carolina.

In all such cases the intention of the parties is to be considered, and it seems quite manifest these parties intended those deeds should have effect from the day of their execution, if the conditions were performed; and they were fully performed.

But were these deeds delivered to a stranger, so as to constitute an *escrow?* The proof is, they were delivered to the solicitor of the company. Now, since a corporation can only act through its officers and agents, a delivery of a deed to one of its officers would be a delivery to the company, and therefore would take effect immediately. *Foley* v. *Cowgill*, 5 Blackf. 20; *Worrall* v. *Munn et al.*, 1 Seld. (N. Y.), 229.

The case cited by appellant from 4 Fla. 359, *Southern Life Ins. and Trust Co.* v. *Cole*, holds, that a delivery to an officer or servant of a corporation, is delivery to the corporation, with the addition that such delivery is for the use and benefit of the corporation, and with an intent to pass an absolute property or interest in the deed delivered. That court did not think there was such a personal identity between the corporation and its officers, that a deed may not be placed in the hands of the latter as an escrow until the performance of some condition. The court, however, in that case refused to permit the deed to take effect in favor of the company from its date, because it would do wrong and injustice to the rights of other parties.

The question of intention in the case before us was left to the jury, and they have found the deeds, by agreement of the parties, were to take effect on the first day of May, 1860, and it is not pretended, any rights or interests have intervened to be injuriously affected by such an agreement. Justice is done by it, because the plaintiffs have paid the interest on these bonds and mortgages from the first day of May, 1860, at which date, all claim and interest of their vendors ceased, and so ceasing the plaintiffs became entitled to the rents and profits of the tenancy, then existing and theretofore created. A suit brought by these vendors, for the rent of these premises, could not, under the facts proved, be maintained. They sold the premises on a condition which has been fully performed with an express agreement, when performed, their deed should take effect on the first day of May. They could not afterwards retract this, nor could any other person, except, perhaps, creditors, gainsay the validity of such an agreement in the absence of fraud. We are inclined to think the delivery of these deeds, under the circumstances, was absolute in the first instance.

As to the instructions, they have received careful consideration. There were two given on behalf of the plaintiffs, fully and clearly stating the law on the evidence. *McKinney* v. *Peck*, 28 Ill. 174; 4 Kent's Com. 112.

The views we have presented dispose of the first and second instructions asked by the defendant. The deeds took effect from the first day of May, 1860. The condition was not, on the first delivering of the deeds, that they should not then "take effect," but that they should not be recorded, or be made use of, until the bonds and mortgages were returned from Pittsburgh. As to the third instruction, it seems not applicable to the case, as the evidence shows that the agreement made by defendant with Cobb related as well to the year 1860 as to 1859. The defendant would be considered as holding over in 1861 on the terms agreed upon with Cobb.

The modification of the fourth and fifth instructions of defendant were correct. There was no such eviction, or any-

thing equivalent to it, as would take away the landlord's right to rent for the part actually occupied. If, as the court said, it was the understanding that the railroad track might be put across the lots, in the event the company purchased them, and defendant held under that understanding, the putting down the track after the purchase would not amount to an eviction. Forcible expulsion was not necessary, but any act done in violation of the rights of the tenant, without his consent, might amount to an eviction.

The instructions, eight in number, given by the court for the defendant, placed his case in an attitude as favorable as the facts would warrant.

The plaintiffs' instructions make no point as to the time their title accrued, and those of the defendant limit the right of the recovery to the time subsequent to the execution of the bonds and mortgages, and the deeds placed upon record, passing by entirely, the agreement of the parties as to the time when the deeds should take effect.

The court then did not, in any of the instructions given, or by indirection in refusing other instructions, decide that the title to land can be carried back by parol. That point was not made in the court below, and is not, therefore, determined by the instructions. One of the deeds was not acknowledged until the 14th of May, but it was executed on the first. No point, however, was made on that.

Perceiving no error in the record, the judgment must be affirmed.

*Judgment affirmed.* ✓