EDWARD ROBERTS, Defendant in Error, *vs.* ARTHUR ROBERTS *et al.* Plaintiffs in Error.

*Opinion filed June 18, 1913.*

1. TRUSTS—*court of equity has jurisdiction to appoint trustee.* Where the trustee named in a will to carry out its provisions refuses to act and no provision is made in the will for a successor, a court of equity has jurisdiction, upon the filing of a proper bill for that purpose, to appoint a trustee to carry out the provisions of the will.

2. SAME—*court of equity may authorize trustee for minors to convert land into money.* A court of equity, when it clearly appears to be for the best interests of minor beneficiaries, has power to authorize the guardian or trustee for such minors to convert real estate into money and make a re-investment; and such power is recognized and confirmed by section 50 of the Chancery act.

3. SAME—*court should not authorize unconditional sale to one party.* In exercising its power to convert real estate of minor beneficiaries into money the court should not make an unconditional order for the sale of the land for a certain sum to a named corporation, but should order the land sold, after due notice, to the highest bidder at public sale.

4. SAME—*precise interests of parties need not be determined on application to sell land.* Where all of the parties having a possible interest in a tract of land, including the minors, are before the court in a proceeding to authorize the trustee to convert the land into money, the trustee may be given such authority without determining the precise interests of the various parties, as that question may be determined on final distribution of the trust fund.

WRIT OF ERROR to the Circuit Court of LaSalle county; the Hon. JOE A. DAVIS, Judge, presiding.

W. C. JONES, for plaintiffs in error.

Boys, Osborn & Griggs, for defendant in error.

Mr. Justice Vickers delivered the opinion of the court:

This is a bill in chancery brought by Edward Roberts in the LaSalle county circuit court to obtain the appointment of a trustee to execute the trust created by the last will and testament of John D. Roberts, and for a decree authorizing and directing said trustee to sell and convey certain lands belonging to the estate of the testator and to re-invest the proceeds, on the ground that such sale and re-investment are for the best interest of all persons concerned, including certain infant defendants.

The bill alleges that John D. Roberts died testate on the first day of May, 1908, leaving no widow surviving him but leaving certain children as his heirs and devisees under his will. At the time of the death of the testator three of the children were minors, namely, Thomas, aged seventeen years, Ruth, aged fifteen years, and May, aged ten years. These minors were all living at the time the bill was filed, about four years after the death of the testator. The will was admitted to probate in LaSalle county June 8, 1908, and, omitting the mere formal parts, is as follows:

"*First*—I desire and direct that all of my just debts and legal liabilities be paid as soon after my death as may be conveniently done, dollar for dollar.

"*Second*—I give, devise and bequeath to Ezra H. Bailey, now cashier of the Union National Bank at Streator, in said county, all of the property, of every kind and nature, of which I may die seized, both real and personal and wherever situated, he, the said Bailey, to hold the same for the use of my children and he to pay out and distribute the same as follows: I direct that from the rents, profits and income from my property that my daughter May Roberts, and my daughter Ruth Roberts, and my son Thomas Roberts, who are minors, be supported and educated until they, and each of them, shall arrive at the age of maturity, and that he, the said Bailey, shall pay, as aforesaid, all necessary bills for such purpose.

"*Third*—Should my daughter Emma Roberts not marry and continue to live with my family, I desire and direct that she have

and receive from my property the like support as heretofore pro-
vided for my minor children, and such support be paid by said
Bailey until said minor children shall arrive at the age of ma-
turity, provided, as aforesaid, that she shall not marry and shall
live with the minor children after my death.

"*Fourth*—Aside from the children above named I have other
children, to-wit, Elizabeth Roberts, William Roberts, Edward Rob-
erts and Arthur Roberts. After my youngest child shall have ar-
rived at the age of maturity, then I give, devise and bequeath to
my children, to-wit, May Roberts, Ruth Roberts, Thomas Roberts,
Elizabeth Roberts, William Roberts, Edward Roberts, Arthur Rob-
erts and Emma Roberts, all of my property, both real and personal,
of every kind and nature and wherever situated, they to have, hold,
own and enjoy the same in fee simple, in equal parts, forever. I
direct that the said Bailey, at the time of the maturity of my said
youngest child, as aforesaid, turn over to my said children, in kind,
all the property which he shall receive from my estate, less ex-
penses and reasonable charges for attending to the same.

"*Fifth*—Should my youngest child die before maturity, then and
in that event I desire that my said estate be divided when the
other two minor children shall arrive at the age of maturity.

"*Sixth*—Should any of my said children die without issue of
their body and before distribution of my said estate, then and in
that event I direct that the living heirs take his or her proportion
in equal parts.

"*Seventh*—I hereby appoint the said Ezra H. Bailey trustee, to
hold my said property for the uses and purposes above set forth.

"*Eighth*—I hereby nominate and appoint the said Ezra H. Bailey
executor of this my last will and testament."

The bill alleges that the testator left about $9000 in per-
sonal property, all of which was applied to the payment of
the debts of the estate; that he owned several town lots and
tracts of land in or near the city of Streator, in LaSalle
county; that among these lands is a tract of 78 acres, which
is described in the bill as located near the city of Streator.
It is this 78-acre tract which the decree below authorizes
the trustee to sell and is the only property that is directly
involved in this litigation. It is alleged that said tract is
rough and broken and unfit for cultivation; that there is
a ravine running across it, over the mouth of which the
testator constructed a dam holding the water back in the
ravine and forming a lake; that the construction of the

dam cost approximately $5000; that for a time after the construction of the dam considerable income was derived from the sale of water to the operators of coal mines in that vicinity and to the people residing in the village of Kangley; that the coal mines in that vicinity have been abandoned and that the village is practically depopulated, and that now the only income derived from said tract is about $450 per annum received from the privilege of cutting ice upon the lake; that said dam is out of repair and in danger of being carried away, and with the loss of the dam the tract of land would yield an income of less than $150 per annum. It is also alleged that the lake is being filled in by soil, and that it will be necessary to expend between $4000 and $5000 to repair the dam and dredge out the lake. It is stated in the bill that the Public Service Company of Northern Illinois, a corporation engaged in the manufacture and sale of gas and electricity, is desirous of establishing a station near Streator and for that purpose requires a location where large quantities of water fit for use in boilers can be obtained, and that said company has made a cash offer of $24,000 for said 78-acre tract. It is alleged the land, excluding the value of the water, would not be worth to exceed $150 per acre. The bill alleges that Ezra H. Bailey, who is named as trustee and executor in the will, refused to accept the trust, and that William Roberts was appointed administrator with the will annexed, and that said administrator had fully and finally settled his accounts on March 2, 1910; that Emma Roberts has remained unmarried and continues to reside with the minor children and to care for them; that the net income derived from the estate of the testator amounts to about $600 per annum, and that sum is barely sufficient to educate and maintain Emma Roberts and the minor children; that there are no funds on hand belonging to said estate and no means of procuring any to repair and re-build said dam and to dredge out the lake, and that unless these repairs are made the dam

will be destroyed and the income from the 78-acre tract will be reduced to about $150 per annum and the value of said tract will be greatly depreciated; that if said tract is sold, the $24,000 can be so invested as to yield a much greater income to the estate than can be obtained from the land in its present condition.

Arthur Roberts, one of the sons of the testator, is married and has two children living,—Naomi Roberts and Rejean Roberts,—both of whom are minors, aged six and four years, respectively. It is alleged that after the death of his father, and prior to the filing of the bill, Arthur Roberts conveyed his interest in said 78-acre tract of land to his sister Emma. It is also alleged in the bill that prior to his death the testator conveyed to Ezra H. Bailey, as security for certain indebtedness, certain properties other than the 78-acre tract, and that said indebtedness has been fully paid but said Bailey has not re-conveyed said real estate but still holds the legal title thereto.

Ezra H. Bailey and all of the children and grandchildren of the testator were made parties defendant to the bill, all of whom, with the exception of the three minors, filed answers, in which they admitted the allegations of the bill and alleged they believed it to be for the best interest of the estate to sell the 78-acre tract of land and re-invest the proceeds. A guardian *ad litem* was appointed for the three minor defendants, who filed an answer, submitting the rights of his wards to the consideration and protection of the court. The prayer of the bill is, that a trustee be appointed by the court in the place of the one named in the will, who has refused to accept the trust, and that said Ezra H. Bailey be required to convey to said trustee all of the real estate the legal title to which is in him, belonging to the estate of the testator; that all of the adult children of the testator be required to convey to said trustee their interest in the said 78-acre tract of land, and that Emma Roberts, as guardian of Thomas and May Roberts, be re-

quired to convey to such trustee all of their interest in said real estate, and in case any of the parties neglect or refuse to make such conveyance, that the master in chancery be directed to execute conveyances to said real estate; and finally, that the trustee then be authorized and directed to sell and convey to said Public Service Company of Northern Illinois the said 78-acre tract of real estate in the bill described, upon the payment to him of the sum of $24,000, and that said trustee be directed to invest said $24,000 in such interest-bearing securities as the court shall direct, and to apply the income therefrom in the manner and for the purposes directed by the testator in his last will, and that the court retain jurisdiction of the said trustee until the termination of the trust, and that he be authorized to apply to the court, from time to time, for directions.

The cause was referred to a master in chancery to take the evidence and report his findings. The master reported that the evidence fully sustained the bill and recommended a decree in accordance with the prayer thereof. The guardian *ad litem* filed objections to the master's report. These objections were overruled and were renewed as exceptions in the trial court. All of these objections except the third, which is not necessary to be considered, were overruled and a decree entered finding that it was for the best interest of the minor defendants and all others to sell the 78-acre tract to the Public Service Company for $24,000. The decree appointed Oscar B. Ryon trustee and authorized and directed him to execute the decree. Bailey was ordered by the decree to convey to Ryon, as trustee, all of the real estate the title to which vested in him, as trustee or otherwise, including the real estate which had been conveyed to him as security for certain debts of the testator which had been paid and discharged. The decree specifically directed and authorized the trustee to convey said 78-acre tract of land to the Public Service Company for $24,000 and to invest the proceeds in interest-bearing securities, and

to apply the income arising therefrom as directed by the last will and testament of John D. Roberts. The minor defendants, or their guardian *ad litem,* have sued out a writ of error from this court to reverse the decree below.

The errors relied upon for reversal are: First, that the court erred in appointing a successor to Ezra H. Bailey as trustee; second, that the court erred in directing the successor in trust to sell and convey to the Public Service Company the 78-acre tract of land described in the bill; third, the court erred in finding that the deed from Arthur Roberts to Emma Roberts divested the interest of his children. Other assignments of error are made on the record, but all of the questions involved may properly be considered under the assignments above stated.

This suit is not an unfriendly one, nor is it one in which the parties are antagonistic, in the sense that one party is seeking to obtain one result and the other another and a different result. It is a case involving the conversion of real estate of considerable value, in which minors have an interest, into personal property, and the judgment of the court is invoked as a guide for the action of the trustee and a protection to him and those who may invest a large sum of money in the real estate involved. Plaintiffs in error being under lawful age are unable to give a binding consent, either personally or through their representatives, to the conversion of their real estate into personal property. All of the parties in interest who are *sui juris* have given their full assent to the proposed sale. It is their belief that the transaction is to the advantage of all concerned, including the minors. Under the testimony in the record the proposed sale of the 78-acre tract would seem to be highly advantageous to the interests of all the parties concerned. No time need be taken up with a discussion of the advisability of disposing of this real estate. In view of the condition of the land and the meagre income of the trust estate it is

not surprising that the adult heirs are unanimously in favor of making the sale.

The first error assigned questions the power of a court of equity to appoint a trustee as a successor in trust to the trustee named in the will. The jurisdiction and control of trusts and trustees is one of the oldest and best established doctrines of courts of equity. (Perry on Trusts,—6th ed.— sec. 282; *Golder* v. *Bressler,* 105 Ill. 419; *West* v. *Fitz,* 109 id. 425.) . In the case last above cited, this court, speaking by Mr. Justice Mulkey, on page 442 said: "The author of every trust has full power to provide for the appointment of a successor or successors in trust in case the original trustee or trustees refuse to act, die, remove into a foreign jurisdiction or are removed by a court of competent jurisdiction. But where the author of the trust makes no provision, as is the case here, for the appointment of a new trustee in any of the contingencies mentioned, and a vacancy occurs in the trusteeship, as it has in the present case, a court of general chancery jurisdiction, upon a proper bill filed for that purpose, may make the appointment." The doctrine of this case has been affirmed in numerous later cases. *French* v. *Northern Trust Co.* 197 Ill. 30; *Wilson* v. *Clayburgh,* 215 id. 506; *Dwyer* v. *Cahill,* 228 id. 617.

. Plaintiffs in error next contend that the court had no power to authorize a conversion of the real estate of the minor defendants into personalty. Cases are to be found in the earlier English reports holding that trustees or guardians may not be permitted to change the nature of the infant's property by converting personalty into realty, or *vice versa.* (*Rook* v. *Worth,* 1 Ves. 461; *Ex parte Phillips,* 19 id. 122; Perry on Trusts,—6th ed.—605.) The reason for this rule was, that formerly an infant at seventeen years of age might make a will of personalty but not of real estate, and to convert his personalty into real estate took away a power that the law gave him. On the other hand, to convert his real estate into personalty gave him a

power contrary to the policy of the law. (*Ware* v. *Pol-hill*, 11 Ves. 278.) The reason for the rule disappeared when the Statute of Wills took away the right of infants to make wills, either of real or personal estate, before they were twenty-one years of age. This rule never existed in this jurisdiction. The general rule in this country is, that a guardian or a trustee cannot convert an infant's personalty into real estate, or· *vice versa,* without the sanction and direction of a court of competent jurisdiction. (Perry on Trusts,—6th ed.—606, and cases there cited.) The power of courts of chancery in this State, by virtue of their general jurisdiction over the estates of infants, to authorize the conversion of their real estate into personalty when it is clearly for their interest, is supported by numerous decisions and is so well settled as to be no longer an open question. Courts of equity have the unquestioned power to change the character of property belonging to infants, and this jurisdiction is not unfrequently exercised. When it is manifestly to the advantage of the infants, courts of chancery do not hesitate to grant trustees and guardians leave to change the character of the property of their beneficiaries. (*Smith* v. *Sackett,* 5 Gilm. 534; *Curtiss* v. *Brown,* 29 Ill. 201; *Dodge* v. *Cole,* 97 id. 338; *Allman* v. *Taylor,* 101 id. 185; *Hale* v. *Hale,* 146 id. 227; *Gavin* v. *Curtin,* 171 id. 640; *Gorman* v. *Mullins,* 172 id. 349; *Baldridge* v. *Coffey,* 184 id. 73; *Johnson* v. *Buck,* 220 id. 226.) The reasons for the exercise of this jurisdiction are expressed with great force by Mr. Chief Justice Caton in *Curtiss* v. *Brown, supra,* where he said (p. 229) : "The case might exist where the property was unproductive, as in this case, but where the *cestui que trust* was absolutely perishing from want or forced to the poor-house, or where the trustee could not possibly raise the means to pay the taxes upon the property and thus save it from a public sale˚and a total loss. Can it be said that the beneficiary of an estate which would bring in the market $100,000 should perish in the

street from want or be sent to the poor-house for support, or that the estate should be totally lost, because there is no power in the courts to relieve against the provisions of the instrument creating this trust? Exigencies often arise not contemplated by the party creating the trust, and which, had they been anticipated, would undoubtedly have been provided for, where the aid of the court of chancery must be invoked to grant relief imperatively required, and in such cases the court must, as far as may be, occupy the place of the party creating the trust and do with the fund what he would have dictated had he anticipated the emergency."

If any additional authority were necessary to warrant the exercise of this jurisdiction in a proper case, section 50 of chapter 22 of Hurd's Statutes of 1911 would seem to supply it. That section is, in part, as follows: "The court may hear and determine bills to * * * appoint trustees, and authorize trustees to lease, mortgage and sell, improve, exchange and invest any portion or all of any trust estate, or to do any other acts or thing, or exercise any power and discretion which is necessary for the conservation, preservation, protection or betterment of said estate during any period of contingency pending a contingent remainder or executory devise or otherwise." Whether this statute confers any new or additional powers on courts of equity need not be here determined, but clearly it confirms and authorizes the jurisdiction invoked in the case at bar.

Plaintiffs in error raise a question in regard to the character of the estate devised by the fourth clause of the will to the children of the testator. It is suggested that the remainder is contingent, and therefore the conveyance of Arthur Roberts and wife to Emma Roberts did not divest the interest of the two children of Arthur Roberts. Clause 6 of the will provides, that "should any of my said children die without issue of their body and before distribution of my said estate, then and in that event I direct that the living heirs take his or her proportion in equal parts."

Whether the birth of children to Arthur Roberts had the effect of converting his interest into a fee, which passed by his deed to his sister Emma, need not be determined by the issues presented in this proceeding. All of the parties who have any interest, including the two minor children of Arthur Roberts, are before the court, and upon an application for leave to sell the real estate it is not necessary to determine the precise interest of each party. This question can only arise upon the final distribution of the trust estate.

No reason is suggested, and none occurs to us, why, under the circumstances of this property, the trustee should not have leave to sell the 78-acre tract of land, and the decree of the court below, in so far as it grants such leave, was proper, and the same will be affirmed. But we are of the opinion that the court should not have made an unconditional order for the private sale of this property to the Public Service Company of Northern Illinois for the sum of $24,000. It may be true that this is the highest price that can be obtained for said land, but whether this is true or not can only be satisfactorily shown by offering the property at public auction after due advertisement, thus affording an opportunity for competition among the persons who may desire to buy the land. It will be more satisfactory to the parties in interest and a greater protection to the purchaser to have the property sold, after due notice, to the highest bidder.

The decree of the circuit court is reversed and the cause is remanded to the circuit court of LaSalle county, with directions to that court to modify its decree so as to provide for a sale at public auction after due notice by publication for four weeks and by posting notices in twenty of the most public places in the vicinity where the land is located, and to provide by the decree that said land shall not be sold for less than $24,000.

*Reversed and remanded, with directions.*