(No. 18625.—

JENNIE E. VANEPPS *et al.* Appellees, *vs.* A. T. ARBUCKLE *et al.* Appellants.

*Opinion filed October 25, 1928—Rehearing denied Dec. 11, 1928.*

552

FARMER and DUNN, JJ., dissenting.

LEWMAN & CARTER, JONES, McINTIRE & JONES, and PAUL F. JONES, guardian *ad litem*, (O. M. JONES, of counsel,) for appellants.

ACTON, ACTON & SNYDER, and GUNN, PENWELL & LINDLEY, (WILLIAM M. ACTON, of counsel,) for appellees.

Per CURIAM: A bill in chancery was filed September 1, 1922, in the circuit court of Vermilion county by appellees, praying for certain relief. While the bill was pending, and before any hearing thereon, a number of the parties to the suit died. The bill as finally amended prayed for the partition of certain lands; that a deed purported to have been delivered in escrow be declared void; that the will of Mary E. Arbuckle be construed; and that a trust attempted to be created by it be terminated and a full accounting thereunder made by the trustees.

The facts are, that Mary E. Arbuckle, of the city of Danville, Vermilion county, executed a will on the 13th day of August, 1915. As the will is not lengthy we deem it advisable to set it out in full:

"*First*—It is my will, that my funeral expenses and my just debts be fully paid.

"*Second*—I give and devise to Dr. A. T. Arbuckle, Isaac Rowand and G. D. Rowand the following described real estate lying and being in the county of Vermilion in the State of Illinois, to-wit: (except railway) the northwest quarter of the northeast quarter, and the south half of the northeast quarter; and the east half of the northwest quarter; all in section twenty-eight (28) township seventeen (17) north, range thirteen (13) west.

"Also all that part of the southwest quarter of the northeast quarter of section twenty-six (26) township seventeen (17), north, range thirteen (13) west, lying west of creek; also all that real estate lying and being in the county of Pike, in the State of Missouri, included and described in the tax receipt hereto attached marked 'Exhibit A' to which reference is made for a fuller description; also the following described real estate lying and being in the city of Danville, in the county of Vermilion, in the State of Illinois, to-wit: Lots five (5) and six (6) in John Reager's addition to Danville; in trust nevertheless for the following uses and purposes, to-wit: 1st. To lease, rent and hire any and all of said real estate, and to have, receive, and collect the rents, issues and profits thereof and therefrom and out of the same to pay any and all annual taxes against the same and any and all special assessments, if any, and all indebtedness and incumbrances of any and all kinds against any and all of said real estate; and also out of such rents, issues and profits to pay all indebtedness against the following real estate, now owned by said Dr. A. T. Arbuckle, to-wit: The east half of the northeast quarter of section twenty-seven (27) township fifteen (15) north, range fourteen (14) west, in Edgar county, Illinois.

"2nd. After the payments of all of said indebtedness above mentioned, said trustees, shall if in their discretion they deem best, make final distribution of said property as herein directed, or they may, in their discretion continue to lease, rent and hire the said real estate and accumulate the rents and profits therefrom and postpone such distribution to such future date as they may deem expedient.

"3d. At the time of such distribution under the above, any and all moneys on hand at that time shall be equally divided between Isaac C. Rowand, Edward M. Rowand, John F. Rowand, G. D. Rowand, and Mrs. A. J. Baum.

"4th. Should the above Mrs. A. J. Baum become in needy circumstances at any time said trustees shall advance to her such sums as they may see fit.

"5th. At the time of the final settlement hereunder said trustees shall convey said Missouri lands as follows: The undivided one-half thereof, share and share alike to Isaac Rowand, Edward Rowand, John F. Rowand, Mrs. Helene Richardson and Mrs. A. J. Baum, in fee simple, and the other undivided one-half to said Dr. A. T. Arbuckle for and during his natural lifetime; and at his death one-half of his one-half to the above named Isaac Rowand, Edward Rowand, John F. Rowand, Mrs. Helene Richardson, and Mrs. A. J. Baum, share and share alike in fee, and the other half of his one-half to the brothers and sisters of said Dr. A. T. Arbuckle, share and share alike in fee simple.

"6th. Said trustees shall sell and dispose of the property above described as lots five (5) and six (6) in John Reager's addition to Danville, in Vermilion county, Illinois, to the best advantage and the proceeds thereof to be divided as follows: one-half thereof to said Dr. A. T. Arbuckle, and the other one-half to the above Rowand heirs equally.

"7th. Nothing herein contained shall prevent said trustees selling any or all of said real estate, and dividing the proceeds thereof among said heirs.

"C. Dale Rowand shall be successor in trust to Dr. A. T. Arbuckle, Wilbur Rowand shall be successor in trust to Isaac Rowand, Kyle Rowand shall be successor in trust to G. D. Rowand. Said trustees or successors to execute all conveyances proper hereunder.

"Lastly: I hereby nominate and appoint the above trustees as executors hereof, to be the executors of this my last will and testament hereby, revoking all former wills by me made."

The next day following the execution of the will the testatrix made a codicil thereto, as follows:

"I will and direct that my husband Dr. A. T. Arbuckle, shall have the use and control of the lands in my said last will and testament described in 'Exhibit A' being the Missouri lands, for and during his natural lifetime."

On the same day she executed the codicil the testatrix executed a warranty deed conveying to her brother Gustavus Rowand for life and at his death to his son, C. Dale Rowand, and Myrtle Rowand, the latter's wife, 230 acres of land described, situated in Vermilion county. That land is the property sought to be partitioned and is part of the same property devised by the testatrix to Dr. Arbuckle, her husband, Isaac Rowand and G. D. Rowand, her brothers, in trust. The testatrix's acreage in Vermilion county at the time of her death, August 21, 1915, was mortgaged for $14,000, and her husband's 80 acres of land in Edgar county were mortgaged for $4800. The testatrix left no child or descendants of a child surviving her. She left Dr. Arbuckle, her husband, a sister, Mrs. Baum, three brothers, Isaac C., John F. and G. D. Rowand, also several nieces and nephews and grand-nieces and grand-nephews, surviving her. After the testatrix's death her brother Isaac

died intestate, leaving surviving him a widow, Ida J., and five children, viz., Kyle E. Rowand, Isaac W. Rowand, also known as Wilbur Rowand, Anna M. Bowen, Mary C. Church and Elmo Rowand. Her brother John also died intestate, leaving no widow but leaving his children, John F. Rowand and Jennie E. VanEpps; a grand-daughter, Daisy C. Rowand, the daughter of his deceased son Charles; two great-grandchildren, the children of a deceased daughter of his deceased son Charles; and two grandchildren, the children of a deceased daughter. Her brother Gus has also died intestate since her death, leaving a widow, Wilmetta Rowand, and his children, G. Dale Rowand and Helene Richardson. Since the bill was filed G. Dale Rowand died intestate, leaving Myrtle Rowand, his widow, who is also one of the grantees in the deed here involved, and the minor appellants, Curtis Rowand and Mary Wilmetta Rowand, his children and only heirs-at-law. The widow has since re-married and her name is now Myrtle Pontius.

As the court construed the will in the decree, it was the intention of the testatrix that the equitable remainder in fee, subject to the devise to the trustees, should vest in the sister and brothers of the testatrix, and that the devise was not invalidated by the unlawful trust attempted to be created; that the intention of the testatrix was, by clause 3 of paragraph 2 of the will, that all the real estate described in paragraph 2 should be equally divided, at the time of distribution, among the five persons mentioned; that it was clear there was an omission in clause 3 after the word "above" of the words "said real estate and," and that said words should be supplied to give effect to the intention of the testatrix; and that clause 3 of paragraph 2 should read, "At the time of such distribution (under the above), said real estate and any and all moneys on hand at that time, shall be equally divided among" the five persons named in clause 3 of paragraph 2. In construing a will and giving effect to the intention of the testator, where it is clear on

the face of the will he has not accurately or completely expressed his meaning by the words used and it is also clear what the words omitted are, they may be supplied in order to effect the intention as gathered from the context. *Desmarteau* v. *Fortin,* 326 Ill. 608; *Glover* v. *Condell,* 163 id. 566; *McClure* v. *McClure,* 319 id. 271; *Williamson* v. *Carnes,* 284 id. 521.

The court found and decreed that the deed executed the same day the codicil was, was not delivered and that it was void and of no effect; that when it was executed by the grantor it was delivered to the attorney who prepared it, with instructions to deliver it to the trustees named in the will when the indebtedness mentioned in the will was paid in full. Dr. Arbuckle, one of the trustees, filed an account with his answer, showing his necessary receipts from and expenditures for the trust property during approximately a ten-year period, and the court found that it could not be calculated when, if ever, the indebtedness would be satisfied out of the rents and profits of the land; that the ten-year period following the testatrix's death during which the trustees had control of the land, included five years when conditions were favorable to farming during the war, and that it would require, on a basis of the trustees' account, 275 years to pay the indebtedness. The court found and decreed that paragraph 2 of the will was null and void, as being an unlawful restraint upon the alienation of the property; that the trust be terminated; that the trustees file a complete account; and the court retained jurisdiction for that purpose. The court declared the $14,000 mortgage on the Vermilion county land to be a first lien, and that Dr. Arbuckle have a second lien on the same land for $4800 for the purpose of paying off the indebtedness on his Edgar county 80 acres. The decree finds the respective and proportionate interests of the sister of the testatrix, the heirs of the deceased brothers, and of Dr. Arbuckle, in the 230 acres of land. Dr. Arbuckle and Kyle E. Rowand, as

trustees, were directed to sell at public sale the two lots in Danville and distribute the proceeds of the sale one-half to Dr. Arbuckle and the other half to the same persons and in the same proportion as decreed to be the owners of the 230 acres of farm lands in Vermilion county. The court further decreed that Dr. Arbuckle has a life estate in the Missouri lands, and at his death one-half of said lands should vest in his brothers and sisters, share and share alike, and the remaining half vest in the heirs of the testatrix. The decree appoints commissioners to make partition of the Vermilion county farm lands. Dr. Arbuckle, individually and as executor and trustee, Myrtle Pontius, (formerly Myrtle Rowand,) and the infant defendants, Curtis and Mary Wilmetta Rowand, by their guardian *ad litem,* prayed and were granted an appeal to this court.

The first contention of appellants is that the court erred in taking jurisdiction to construe the will because it is plain, unambiguous and needed no construction. The amended bill was not filed primarily to construe the will but was for partition of the land, to cancel the deed purported to have been delivered in escrow, and to terminate the trust. We think the bill stated a good cause for the exercise of equitable jurisdiction.

The will devises the land in question to the trustees to rent and from the rents to pay taxes and all indebtedness against the land; also $4800 against the land of the testatrix's husband in Edgar county; and after the payment of all indebtedness mentioned, the trustees are given discretion to make final distribution of the property as in the will directed, or they may continue to rent the land and accumulate the rents until such date as they may deem expedient. "At the time of such distribution under the above, any and all moneys on hand at that time shall be equally divided" among the testatrix's sister and brothers. We think the court correctly construed the third clause quoted to mean at the time of the distribution the real es-

tate devised to the trustees, and all moneys on hand, should be distributed.

There is no direction in the will of testatrix for distribution by the trustees at any particular time. The trust was of unlimited duration. The distribution was postponed to such time as the trustees in their discretion might deem best or expedient. It seems clear that the devise to the trustees to distribute being without limitation as to time is void. It deprived the devisees of the use of the remainder or the power to sell it to advantage until the indebtedness mentioned was paid, and the trustees were authorized to postpone the distribution after payment of the indebtedness and accumulate the rents, if they deemed it expedient to do so. The devisees had a right to have the unlawful trust terminated, and its termination did not affect the valid portions of the will or the general testamentary scheme of the testatrix. *Chapman* v. *Cheney,* 191 Ill. 574; *Howe* v. *Hodge,* 152 id. 252; *Johnson* v. *Preston,* 226 id. 447; *Carpenter* v. *Hubbard,* 263 id. 571.

The deed executed by the testatrix the day the codicil was made conveyed to her brother Gustavus Rowand for life, and at his death to his son, G. Dale Rowand, and to Myrtle Rowand, who were husband and wife, the 230 acres of land in Vermilion county. It was drawn by an attorney who testified that he explained to the grantor the effect of delivering the deed in escrow, and told her that if she delivered the deed to some person in escrow she would lose all control of it and could not recall it and she must know positively whether she wanted to part with control of it before she delivered it, and that she said that that was her purpose and that she wanted to deliver it and have the delivery effectual in her lifetime; that she then delivered the deed to him in escrow and told him to hold it until the debts mentioned in her will were paid and for him to deliver it to the trustees, to be delivered to the grantees; that he then took the deed, the will and the codicil and placed

them in an envelope, upon which was written: "The deed herein contained to be delivered to the grantee by the trustees named in the enclosed will, as soon as the indebtedness on the real estate mentioned in said will is paid in full;" that the grantor signed her name upon the envelope after the writing.

To constitute a valid delivery of a deed it is not necessary that the grantor deliver the same personally to the grantee, but where the grantor makes and acknowledges his deed and delivers the same to some third person to deliver to the grantee, and thereby unconditionally and without reservation parts not only with its custody but also with all control of it, this is in law a valid delivery of the deed; and where, as in this case, there is a voluntary conveyance beneficial to the grantees, its acceptance by the grantees, in the absence of evidence to the contrary, is presumed, and they thereby become entitled to the property, and their right thereto cannot be affected by any subsequent acts or declarations of the grantor. (*Dickerson* v. *Dickerson,* 322 Ill. 492.) In the present case Mary E. Arbuckle made and acknowledged the deed. She delivered it in escrow to the attorney fully understanding the force and effect of such delivery, and evinced her desire to part with all control over the deed and to have the delivery effectual in her lifetime. This delivery was complete and effectual and she lost all control over the deed prior to the time of her signing the writing on the back of the envelope. Her delivery of the deed to the attorney was a valid delivery in escrow, sufficient to vest title in the grantees, and G. D. Rowand, the life tenant, having died, the title to the land described in the deed is in appellants, Myrtle Rowand Pontius and Curtis and Mary Wilmetta Rowand, children of G. D. Rowand, their possession and enjoyment of the land being subject to the payment of the indebtedness mentioned in the will. The condition or the happening of the event upon which the grantees were to obtain possession of the deed and the

enjoyment of the premises was the payment of the indebtedness mentioned in the will. This indebtedness could be paid by the trustees as mentioned in the will, or the enjoyment and possession of the premises could be accelerated by the grantees themselves paying the indebtedness. Myrtle Rowand Pontius in her amended answer offered to pay one-half of the indebtedness mentioned in the will, and suggested that the other half be paid by her children, the infant appellants, and the latter by their guardian *ad litem* answered, asking that the court elect for them to pay the other half of the indebtedness and to decree them to be the owners of the undivided half of the real estate conveyed by the deed. The court refused such offer of Myrtle Rowand Pontius and refused to elect for the minors to pay the indebtedness and take the deed.

Courts of equity have a plenary jurisdiction over the persons and estates of infants, and in exercising jurisdiction may cause to be done whatever may be necessary to preserve the estates and protect the interests of the infants. Where it is for the benefit of the minors, courts of equity have the power, by virtue of the general jurisdiction over the estates of minors and others under disability, to authorize a change from real to personal and from personal to real, and this jurisdiction is not infrequently exercised. When it is manifestly to the advantage of infants, courts of chancery do not hesitate to grant trustees and guardians leave to change the character of the property of their beneficiaries. (*Roberts* v. *Roberts,* 259 Ill. 115; *King* v. *King,* 215 id. 100; *Chapman* v. *American Surety Co.* 261 id. 594.) Here the evidence shows that it would be manifestly to the advantage of the infants if they should be allowed to pay off the present indebtedness upon the premises, as the interest in the property which they would receive would be worth several thousand dollars more than the amount they would be required to pay. Mary E. Arbuckle made a valid delivery of the deed in escrow to the attorney. Ap-

pellants are desirous of performing the conditions of the escrow. The heirs of the grantees in a deed delivered in escrow have as much right to perform the conditions of the escrow as the grantees to secure the deed and perfect their title to the land. (*Price* v. *Pittsburg, Fort Wayne and Chicago Railroad Co.* 34 Ill. 13.) The court should therefore have allowed Myrtle Rowand Pontius to pay one-half of the indebtedness mentioned in the will and have elected for the minor appellants that they be allowed to pay the other half of the indebtedness, and should have decreed that upon their so doing the deed be delivered to them by the party holding it in escrow and that thereupon the title to the real estate should vest in them in full.

The judgment of the circuit court of Vermilion county is reversed and the cause remanded to that court, with directions to enter a decree in accordance with the views herein expressed.

*Reversed and remanded, with directions.*

FARMER and DUNN, JJ., dissenting.